JAMES BARRETT and COMPANY, appellees, vs. CALEB HALL and COMPANY, appellants.

*Rutland,* January, 1826.

The defendants gave to the plaintiffs a note, payable in good cooking stoves, at the furnace price, in fifteen days from date, if demanded; and cooking stoves were afterwards delivered upon orders of the plaintiffs, to be applied on the note to the full amount, at the furnace price; but some of them, on use, cracked in the fire, and fell to pieces.—*Held,* That the transaction was not to be distinguished from the case of a contract executed, or sale and delivery at the time; and that the descriptive term "*good,*" in the contract, did not amount to a warranty of the quality of the articles.

*Held,* also, That the defects being latent, and unknown to the parties at the time, the delivery and receipt of the stoves was a satisfaction of the note, notwithstanding the defects in the stoves.

*ASSUMPSIT.*—The plaintiffs, in their first count, declared upon the instrument set forth below, as upon a promissory note.

In their second count, they set forth, that, *whereas,* the defendants, at, &c. on, &c. were indebted to them, in and by the said note, &c. in consideration that the plaintiffs would receive of them the defendants, five cooking stoves, in part payment of the said note, at and for a certain price or sum of money, to wit, the sum of $260, they the defendants undertook, and to the plaintiffs faithfully promised, that the said cooking stoves were good cooking stoves; and the plaintiffs aver, that they, confiding in the said promise and undertaking of the said defendants, afterwards, to wit, at, &c. on, &c. did receive of the defendants the said five stoves, for the said sum of $260, on the said note in part payment thereof. Yet the defendants, contriving and fraudulently intending to injure the plaintiffs in this behalf,

*Rutland,*
*January,*
*1826.*

Barrett & Co.
*vs.*
Hall & Co.

did not perform or regard their promise and undertaking, so by them made, as aforesaid; but thereby craftily and subtilly deceived and defrauded the plaintiffs in this, to wit, that the said stoves, at the time of making the promise and undertaking aforesaid, were not good stoves, but on the contrary thereof, were bad, unsound, and unfit for use; whereby they became and were of no value to the plaintiffs, &c.

A verdict having been taken for the plaintiffs, the cause came before this court in the following

### CASE STATED.

On the trial of this cause the plaintiffs abandoned the third count in their declaration, and relied on the first and second counts. And to support the same, gave in evidence the following note.

"Rutland, Nov. 2, 1820.

"For value received of James Barrett, Jr. & Co. we promise to pay them or order, five hundred and fifty dollars, in good cooking stoves, at the furnace price, such stoves as the said Barret & Co. may choose, that are cast at Clarendon furnace, in fifteen days from date, if called for.

"CALEB HALL & Co."

It further appeared that the plaintiffs, who are merchants, sold the stoves to several of their customers, and gave orders for each of them of the following effect.

"Rutland, Nov. 18, 1820.

"Messrs Caleb Hall & Co.

"Gentlemen—Please deliver Mr. Perkins a fifty-five dollar cooking stove, and it shall answer on your note for stoves we hold against you.          JAMES BARRETT, Jr. & Co."

Stoves were delivered on these orders, sufficient to pay the note at the furnace price, but the note was retained by the plaintiffs.

Some of the stoves turned out to be bad, and fell to pieces on putting the fire in them.

The persons who received them, called on the defendants, by the direction of the plaintiffs, to supply such parts of the stoves as failed; but the defendants said they had not warranted the stoves to Barrett & Co. and refused to do any thing further on the subject.

The cause was continued under a rule by consent, that if the Court should be of opinion, that the plaintiffs were entitled to recover, the verdict was to stand, and execution to issue. Otherwise a nonsuit to be entered.

*Williams* and *Bates*, for the plaintiffs, insisted that the note contains a warranty as to the quality of the stoves. The word "good" was the most natural and proper to express a warranty in such a case, and was manifestly introduced for that purpose. If it does not import this it must be rejected as surplussage; no other meaning can be given to it.

As to the form of declaring. The evidence was proper under the first count. It was early settled in this state, that such contracts might be declared upon as promissory notes. [*Chip. on*

*Rutland,*
*January,*
*1826.*

Barrett & Co.
*vs.*
Hall & Co.

*Contracts,* 18, 178.] It must follow then, that the same evidence will sustain the action as if the declaration was special. In other words, the remedy is upon an express contract, and that express contract is one which our Courts have decided may be declared on in this form of action. It is immaterial whether the non-performance consists in not delivering an article, or not delivering one as good as the contract requires.

As to the acceptance of the stoves by the plaintiffs, it was not a waiver of the warranty, because it was the intention of the parties, and the true meaning of the contract, that there should be an acceptance under the subsisting warranty that the stoves were good. Could the quality of the stoves have been detected by inspection, a waiver might be inferred by acceptance.— *Chip on Contr.* 178.

It was not a payment of the note, because the promise was to deliver good stoves; and these were not so. They were however payment as far as they go; for as it was impossible to detect their quality by inspection, the parties, as is inferred by the contract, contemplated an acceptance upon these terms.

They contend, also, the evidence was proper under the second count.

*Page* and *Phelps,* for the defendants—The plaintiffs cannot recover on the first count, for the articles were received in payment of the note, and never returned. There is no pretence for saying that the note is unpaid.

At all events, the right to return the stoves depends altogether upon the warranty, and of course it becomes unnecessary to consider the first count.

As to the second count;

1. There is no pretence of a deceit, and there is no express warranty. The term "good" in the note, is to be taken as mere *description.* It is too loose and indefinite to be taken as importing a warranty of any particular quality.

2. There is no implied warranty.

The case is to be considered as a case of the sale of the commodity simply, and in such case no warranty as to quality is implied.—*Parkinson* vs. *Lee,* 2 *East.* 314.—*Baglehole* vs. *Waters,* 3 *Campb.* 154.—*Pickering* vs. *Dowson,* 4 *Taunt.* 779.—*Bluett* vs. *Osborne,* 1 *Stark.* 384.—*Leixas* vs. *Wood,* 2 *Caines,* 48.—*Holden* vs. *Dakin,* 4 *John.* 421—*Dains* vs. *Meeker,* 5 *John.* 354.—*Emerson* vs. *Brigham,* 10 *Mass.* 117.—*Penniman* vs. *Pierson,* 1 *Chip.* 394.—*Cooper's Justinian,* 609.

It appears in this case, that the fault in the stoves proceeded from a secret defect in the iron, of which the defendants cannot be presumed to be connusant. It is therefore the common case of an article of merchandize, with a secret defect, unknown alike to the vendor and purchaser, and sold without warranty, and in good faith.

In executory contracts of sale, there is an implied warranty, that the article furnished, shall be of the kind stipulated for, but not as to quality.—*Bridge* vs. *Waire,* 1 *Stark.* 504.

*Rutland,*
January,
1826.

Barrett & Co.
*vs.*
Hall & Co.

The plaintiffs, having had an opportunity of inspecting the stoves, and having accepted them, they are estopped from objecting that they did not answer the description of the contract.

The opinion of the Court was delivered by

SKINNER Ch. J.    This case cannot in principle be distinguished from the case of an executed contract—*i. e.* a contract in which the article sold is delivered at the time of the sale.    The contract was to deliver, on demand, good cooking-stoves.— Stoves were received upon the contract, and endorsed upon *the* note.    The terms of the contract, though written, can receive no construction different from what would be given, if it had been by parol, and the liability must be the same upon any affirmation or undertaking of the vendor, at the time of delivering the article, as upon such as may have been made or entered into prior thereto ; the article having been received and applied upon the contract.    The question then is, does the affirmation of the vendor, that the article sold is *good*, amount to a warranty as to its quality?

There is nothing in the case that shows the vendor to have been the *manufacturer.*    Whether such person would be held liable or not is not the inquiry.

In the sale of goods, that there is no implied warranty that the article sold is sound, or free from latent defects, has long since been recognized as an established principle of the common law.—1 *D. Chip.* 394, *Penniman* vs. *Pierson.—Doug.* 18.— 2 *East.* 314.—3 *Com. L. R.* 208, *note.*

There is no case shown, nor can any be found, in which the vendor of an article, ignorant of any defect, has been held liable for affirming it to be good.

No definite quality can be intended by the term *good*, and though, from the first view of this case, I was inclined to the opinion that it would be proper to consider it as a warranty that the article sold possessed the ordinary qualities of articles of the kind, upon a full examination of the question, we are satisfied that such construction would be attended with much difficulty in its application, generally, to contracts in the sale of the various articles of merchandize and commodities in which the citizens deal.    A merchant, in vending the articles in which he deals, affirms them to be good, yet, unless he knows of some defect, it has never been held, nor is it generally understood, that any particular quality is thereby intended, or that he is accountable if they prove not to be good.    This doctrine is fully recognized in the case, *Chandellor* vs. *Lopus Cro. Ja.* 4.

This language imports nothing but opinion, and is so understood by the parties to a contract; and for this, though the article has secret defects, the vendor is no more liable in case of mistake, than the vendee would be, if it should prove to be of a superior quality than was supposed.

Rutland,
January,
1826.

Barrett & Co.
vs.
Hall & Co.

The verdict therefore must be set aside, and by the agreement of the parties upon the record, a nonsuit is to be entered.

*Moses Strong, C. K. Williams,* and *R. B. Bates,* for the plaintiffs.

*Wm. Page* and *S. S. Phelps,* for the defendants.