## JOSEPH WEEKS vs. HUBBARD B. BURTON.

An action can be maintained for a false and fraudulent representation of the responsibility of a person, whereby an injury has been sustained by the one to whom it is made.

A representation that a note is good is equivalent to representing that the maker is responsible.

This was an action of trespass on the case, alleging that the defendant, by falsely and fraudulently affirming that one Elijah Baker was good and responsible, and that said Baker's real estate was unencumbered, had induced the plaintiff to receive of the defendant a note of sixty-five dollars, signed by Baker, in part payment for a horse sold by the plaintiff to the defendant. The note was dated, March 27th, 1831, and payable four years from date, with interest.

The plaintiff, on trial upon the general issue, gave in evidence, that on the third day of February last, he sold a horse to the defendant, and received said note in part payment for the same; that the plaintiff requested the defendant to endorse the note,

FRANKLIN,
January,
1835.

Weeks
vs.
Burton.

which defendant refused; but that at the time, the defendant said the note was good, and also told the plaintiff, that he had, on the Thursday preceding, been at. the town clerk's office in Georgia, where said Baker resided, and that one of said Baker's farms was unencumbered, and the other was mortgaged. It further appeared by the plaintiff's showing, that on the said Thursday the defendant was at Georgia, and that said Baker at that time had real estate in Georgia, free of encumbrance, to the value of more than one thousand dollars. It also appeared from plaintiff's showing, that defendant had, on one other note which he held against Baker, attached eighteen head of cattle, and that they were then in custody of the officer, at the house where the sale of the horse took place; and it did not appear whether Weeks had knowledge of the attachment or not at the time of his receiving the note; but after he received the note, and before he delivered the horse to defendant, he was informed of that fact, and did not then offer to return the note or have the trade rescinded.

It also further appeared, from the plaintiff's showing, that Seymour Eggleston, sheriff, had, that morning previous to the trade with Weeks, called at the house of Mrs. Ball, where the trade was made, and informed her, in presence of defendant, that he could not find personal property of Baker's sufficient to secure the payment of a fifty dollar execution, which he then held against Baker, adding that Baker's creditors had stripped him; but that said Eggleston gave no information respecting the real estate to the defendant. It was proved by other evidence, that very early that morning, the creditors of Baker had taken all his property, real and personal. The plaintiff was acquainted with Baker, and resides within five miles of him. The defendant resides in the state of Ohio, and was then here on a visit. It did not appear that defendant gave notice to the plaintiff of the information he received from Eggleston.

Upon this statement of facts, the defendant contended that the jury could not be warranted in finding a verdict for the plaintiff.

The court charged the jury, that the defendant's declaration at the time of sale, "*that the note was perfectly good,*" was tantamount to saying that Baker was amply responsible; and whether they supposed Weeks to have placed any reliance on the declaration, or not, as mere matter of opinion as to the previous general responsibility of Baker, (which was probably as well known or better to him than the defendant) it might properly be assumed that he relied on it as an assertion that defendant was aware of no

recent facts unknown to Weeks, which were inconsistent with the opinion that the note was good; or in other words, that Baker would prove responsible. The suppression of the information received from Eggleston, and the defendant's affirmation respecting the note were therefore a fraud on Weeks, and entitled him to a verdict.

FRANKLIN, *January*, 1835.

Weeks
*vs.*
Burton.

Verdict and judgment for plaintiff, and exceptions by the defendant to the charge were allowed and certified.

*Mr. Stevens and Mr. De Witt for the defendant.*—1. In this cause the defendant contends, that the evidence introduced by the plaintiff did not even tend to prove the allegations contained in his declaration.

2. It is contended, that the court erred in charging the jury that the defendant's declaration, "that the note was perfectly good," was tantamount to saying that Baker was amply responsible. For the descriptive term, "good," does not amount to a warranty.—1 Aik. Rep. 269, *Barrett & Co.* vs. *Hall & Co.*

3. In order to sustain this action, it is not only necessary that the representation of the defendant to the plaintiff was untrue, but that it was made by the defendant knowing it to be false, and that the plaintiff has in consequence of such false representation suffered a loss.—2 East. Rep. 92, *Hoycroft* vs. *Creasy.* Fell on Guar. 387.

In this case the defendant made no false representation. The situation of Baker's real estate was as represented, and the note was good; that is, it was exactly what it purported to be, not a forgery, and for aught yet known, may be paid when it arrives at maturity.

When the defendant refused to endorse the note, he thereby gave notice to Weeks that he must take the note at his own risk, if he took it all.

It is also contended, that there is no evidence that the defendant stated any thing which he knew to be false, or even any thing which he had reason to doubt. Baker, on the Thursday next preceding the sale complained of, was possessed of more than one thousand dollars worth of real estate, which was unencumbered.

Might not the defendant then have honestly recommended him to have been good for so small a sum as sixty-five dollars, when it is not proved that defendant knew of Baker's being indebted in any other sum than the fifty dollars mentioned by Eggleston.

FRANKLIN,
January,
1835.

Weeks
vs.
Burton.

*J. Smith for the plaintiff.*—1. It is contended by the plaintiff, that the declaration made to him by the defendant, at the time of the sale of the note in question, " *that the note was perfectly good*," was, in the language of the judge, who tried said cause, " tantamount to saying that Baker was perfectly responsible."

2. The suppression of the fact, by the defendant, that he had attached the cattle of Baker on Thursday before the sale of the note, and also of the information which he received from Eggleston, the sheriff, on the morning before the sale of the note, was such a fraud upon the plaintiff as would make the defendant liable in this action.

The case is so plain, that it is unnecessary to make any reference to authorities in support of the principle contended for.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—The principles of law upon which this action is sustained were declared in the case of *Pasley* vs. *Freeman*, 3 T. R. 51, and were recognized by this court, at the present term, in the case of *Ewing* vs. *Calhoun.* To maintain it, the plaintiff must have proved the representations made by the defendant in relation to the note against Baker, the falsity of those representations, the knowledge of the defendant in relation to the falsity, and that the plaintiff sold the horse and took the note on the faith of those representations, and was thereby deceived. The evidence was, that plaintiff sold the defendant the horse, and received the note in payment; that defendant refused to endorse the note, but at the time declared that the note was good; and that on the Thursday preceding, the defendant had been at the town clerk's office in Georgia, and that one of Baker's farms was unencumbered. To prove the falsity of these representations, the evidence was, that the defendant then had attached, on a note which he held against Baker, eighteen head of cattle, which were at that time in the custody of an officer; that the sheriff had informed a Mrs. Ball, in the presence of the defendant, that he could not find personal property of Baker's sufficient to secure a fifty dollar execution, and that his creditors had entirely stripped him of property. The evidence was also, that in fact the creditors of Baker had that morning taken all his property, both real and personal.

The inquiry is, whether this evidence tended to prove the plaintiff's declaration; and of this there can be no possible doubt. By a representation that a note is good, no other meaning is conveyed, than that the maker is responsible. It would be a far-fetched sup-

position, to say that the parties understood from this expression no more than that the note was genuine. It is in no particular similar to the declaration made, as reported, in the case of *Barrett & Co.* vs. *Hall & Co.*, 1 Aik. 269, where the word good was made use of as applicable to an article of merchandize. As applied to a note, it has a different meaning, and is clearly equivalent to saying that the signers are responsible. It is also to be considered, that the representation was made on a request, by the plaintiff to the defendant, to endorse, and thereby guarantee the payment of the note when it became due, and was also connected with a representation of the property of Baker, and his ability to pay the same. Was this representation false, and known so to be to the defendant? The testimony was abundant to this point. His own attachment, the representation made by Eggleston, the sheriff, in his presence, and the actual condition of Baker at the time, all prove these facts. And his refusal to endorse, and concealing the information which he had thus obtained, are evidence of a design to impose on the plaintiff, and induce him to take the note in payment for the horse. His giving the information of the situation of Baker's property, as it was on the Thursday previous, without at the same time communicating the fact of his failure and insolvency, was well calculated to deceive and defraud the plaintiff. Neither can we see any failure of evidence to convince the mind that the plaintiff relied on this representation, or that if the whole truth had been communicated to him, he would have parted with the horse and received the note in payment without endorsement. Baker was apparently good but a short time previous. There is no evidence that the plaintiff had heard of his failure; nor can it be believed for a moment, that if defendant had communicated all the facts in his knowledge, without endeavoring to create the impression that Baker still remained a responsible man, the plaintiff would have accepted the note. In short, the conduct of the defendant on that occasion, if the testimony as detailed in the bill of exceptions was true, was too evidently designed to create a false belief in the plaintiff, to enable the defendant to profit thereby.

On the whole, the declaration appears to have been proved in every particular, and the charge of the court was correct.