78 495
93 355

STATE OF MAINE *vs.* DEVEREUX N. FENLASON.

Washington.    Opinion December 13, 1886.

*Threats.    Practice.    Alibi.    Sealing up verdict on the Lord's day.*

Evidence of threats to burn the same building, the respondent is charged in the indictment with burning, is admissible.

If the presiding justice, in his charge to the jury, errs in assuming a matter to be uncontroverted, which a party intended to controvert, his attention should be called to the error before the jury retire.

An *alibi* is not a conclusive answer to an indictment unless the respondent proves himself to have been at so great a distance as to render it impossible that he should have participated.

Sending blank forms of a verdict to a jury after twelve o'clock Saturday night, with instructions to seal up their verdict when agreed upon, does not invalidate the verdict.

Where the party is present when a verdict is received, affirmed and recorded, and does not object to the manner of receiving and recording, he waives any irregularity that may have occurred, specially when he can not show that he was prejudiced thereby.

ON EXCEPTIONS.

This was an indictment in which it is set forth in the first and third counts that the respondent, a "dwelling house," in the night time, feloniously, wilfully and maliciously did set fire to, "and the said dwelling house," "by the setting of such fire in the night time, did feloniously, wilfully and maliciously burn and consume," and in the second and fourth counts it is set forth that the respondent, "a certain building called a barn," "in the night time, feloniously, wilfully and maliciously did set fire to with intent" "a dwelling house" "to burn and consume, and that by the kindling of said fire and burning of said barn, the said dwelling house was," "in the night time, feloniously, wilfully and maliciously burnt and consumed"; and it is further set out, in the first and second counts, that the dwelling house and barn were the property of Mary L. Munson, and in the third and fourth counts that said house and barn were the property of Frederick Munson.

John H. Gray, called by the state, testified on direct exami-

nation that he had a conversation with Devereaux Fenlason in the spring of 1885. He was talking over the matter of the trouble between his uncle Stillman and aunt Sophronia; he said if his aunt Sophronia got that property away from Stillman that the buildings would be burned. I told him to be careful how he talked; that the town had a mortgage on that property and the mortgage and notes were in my hands, and he said he did not care if they had, nevertheless there would be a brand put in inside of two months. That was in reference to the same premises upon which Munson afterwards lived, which were burned.

The respondent objected to the conversation, but the objection was overruled, and exception was duly taken.

In the charge to the jury the court used the language following, to wit:

"I do not understand that there is any controversy here in regard to this fact; that the dwelling house of Mrs. Munson was burned in the night time of the 17th of July last, I do not understand to be controverted; nor do I understand that it is materially controverted that it was done by some person with the criminal intent, wilfully and maliciously."

The respondent took exception to this expression of opinion, but no objection was made nor exception taken before the jury retired, and no such contention was made. In the charge to the jury the court made use of the following expression, namely:

"I had supposed that an alibi consisted in proving the prisoner so far away from the commission of the crime that it would be impossible for him to participate in it."

To this instruction the respondent took exception.

The case was committed to the jury at about six o'clock Saturday evening. After being out some time the jury were brought into court, and, after further instruction from the court, were required to retire and consider the case further. This was about eleven o'clock Saturday evening. After twelve o'clock Saturday night, at about half past twelve o'clock, on the Lord's day, the court still being in open session, the court directed the officer to give to the jury blank forms, with directions that when

they agreed upon a verdict they should make it in writing and seal it up. The respondent and his attorney were present when this direction and instruction was given, and they neither objected nor assented to it. Early on the morning of the Lord's day, the jury agreed upon a verdict in writing, in the words following, namely:

" The jury find the respondent is guilty in manner and form as charged against him in the second count of the indictment, and not guilty as charged in the first, third and fourth counts.

Ladwick Holway, Foreman."

This verdict was sealed up, and the jury was then allowed to separate. On Monday morning the jury came into court, more than twenty-four hours after they had separated, and the sealed verdict was opened and read. By direction of the court the clerk made this inquiry of the foreman, namely:

Was any person lawfully within the house at the time it was burned? To this inquiry there was no direct response, and it does not appear that the jury had considered or formed any opinion on this point, further than that expressed in these words of the foreman, namely:

Court: Mr. Clerk, you may inquire of the foreman whether they found that no person was lawfully in the house.

Clerk: What say you, Mr. Foreman, was any person lawfully within the house at the time it was burned?

Foreman: The house that was burned?

Court: It means whether any person was actually, lawfully in it, when it was burned. You remember I instructed you that the evidence was such that you could not find that any person was lawfully in the house at the time.

Foreman: The house was burned by taking fire from the other buildings.

Court: The inquiry is whether the jury were satisfied that no person was in fact lawfully in the house at the time it was burned?

Foreman: I should say not.

Court: The jury were of that opinion?

Foreman : The indictment was read over and voted on it individually as our understanding of it.

Court : Under the instruction I gave you I think you should further find as follows : " And the jury further find that no person was lawfully in the house at the time it was burned, and this should be signed by you and affirmed by the jury."

Under the instructions of the court the following finding was reduced to writing : " And the jury further find that no person was lawfully in the dwelling house at the time it was burnt," and signed by the foreman.

The verdict and this finding were separately affirmed, and by request of the respondent's attorney the jury was polled, and the verdict and said finding were affirmed by each individual juryman, personally.

All the proceedings in receiving and affirming the verdict and directing and taking the special finding, were in the presence of the prisoner and his counsel, and no objection was made or exception taken thereto.

The court was not adjourned Saturday, but took a recess till Monday.

In his charge to the jury the judge instructed them, if they found the prisoner guilty, to find also that there was no person lawfully in the house, as the evidence would not authorize any other finding.

To this the respondent takes exception.

A transcript of the charge is a part of the exceptions.

*E. E. Livermore*, county attorney, for the state, cited : Whart. Crim. Ev. (8th ed.) § 756; *McLellan* v. *Wheeler*, 70 Maine, 285; *State* v. *Reed*, 62 Maine, 129; *Bradstreet* v. *Bradstreet*, 64 Maine, 206; *State* v. *Benner*, 64 Maine, 267; *Grows* v. *M. C. R. R.* 69 Maine, 412; *Webster* v. *Folsom*, 58 Maine, 230; *Maxwell* v. *Mitchell*, 61 Maine, 106; *Lord* v. *Kennebunkport*, 61 Maine, 462; *Oxnard* v. *Swanton*, 39 Maine, 125; *Hoghtaling* v. *Osborn*, 15 Johns. 119; *Hurdekoper* v. *Collin*, 3 Watts. 59; *True* v. *Plumley*, 36 Maine, 466; *Anon.* 63 Maine, 590.

*George M. Hanson* and *Edgar Whitten*, for the defendant.

The evidence offered must correspond with the allegations, and be confined to the point in issue. This rule excludes all evidence of collateral facts. 1 Green. Ev. § § 50, 51, 52.

The allegation in the writ was "burning and destroying the plaintiff's shop, with the goods therein." In *Lord* v. *Moore*, 37 Maine, 217, a witness testified to conversations had "with the defendant to blow up a building of one Stackpole." The court held that "declarations of the defendant, relating to matter in no wise connected with the subject matter then before the jury, could not properly be admitted in evidence."

Matter of fact is within the province of the jury; and the refusal of the judge to reject it may have given it importance in their minds; and with no means of ascertaining that it did not, an exception for this cause is well taken. *Warren* v. *Walker*, 23 Maine, 460; *Lord* v. *Moore*, 37 Maine, 221.

The justice presiding expressed an opinion in his charge to the jury, that it is not "materially controverted" that the house of Mrs. Munson was burned by some person with the criminal intent, wilfully and maliciously, which is in direct contravention of § 83, c. 82, of the R. S.

If an instruction be given to the jury which leaves them to draw an incorrect inference from facts, material to the issue, the verdict will be set aside. *Hastings* v. *Bangor House Proprietors*, 18 Maine, 436.

An instruction to the jury inapplicable to the facts of the case and calculated to have an influence on the verdict, is an error sufficient to cause the verdict to be set aside. *Pierce* v. *Whitney*, 22 Maine, 113.

An alibi need not be proved beyond a reasonable doubt. Therefore the terms "possible" and "impossible" in the instruction of the court with reference to the proof of it, are too strong.

If the evidence touching an alibi is sufficient to raise a reasonable doubt of the defendant's guilt in the minds of the jury, it should be considered, although the alibi does not cover the whole time during which the crime was committed. Waterman's U. S. Crim. Digest, 165–6, and cited cases.

The court was in session, and instructions sent to the jury on the Lord's day. *Dies Dominicus non est juridicus.* No court shall be held on Sunday. R. S., c. 77, § 48.

By the Sunday law of Massachusetts, the legislature intended to prohibit secular business on the Lord's day, and not confine the prohibition to manual labor. *Pattee* v. *Greeley*, 13 Metcalf, 286.

Secular business should be performed on a secular day. *State* v. *Suhur*, 33 Maine, 540.

In a criminal case, the oral verdict pronounced by the foreman in the open court can not be received, unless it is shown to accord substantially with the form sealed up by the jury before their separation. *Com.* v. *Tobin*, 125 Mass. 206.

A privy verdict cannot be given in treason and felony. 3 Blacks. Com. 377, Chitty's note; 4 Blacks. Com. 360, Christian's note.

The weight of authority in Massachusetts appears to be, that in trials for misdemeanors only, the jury may be allowed to separate, but that in cases where the punishments are extreme, they should not be permitted to do so. *Com.* v. *Durfee*, 100 Mass. 149; *Com.* v. *Dorus*, 108 Mass. 488; *Com.* v. *Carrington*, 116 Mass. 39.

In misdemeanors, and in some states in felonies not capital, the court may, with the defendant's consent, permit the jury to separate, and bring in a sealed verdict. Whart. Crim. Plead. & Practice, c. 15, § 749, (8th ed.)

The jury were allowed to separate before they had agreed upon their verdict, as recorded.

After the jury had sealed up their verdict and had separated, the court could not have sent them back to reconsider the verdict, without the assent of both parties, and had they so done, without such assent, it would have been good cause for setting it aside. *True* v. *Plumley*, 36 Maine, 476; *Com.* v. *Durfee*, 100 Mass. 149.

Since the statute of 1872, c. 82, went into effect, assault and battery has been a felony. Though prior to 1872, the maximum imprisonment therefor was less than one year, the legislature

has increased the maximum to a term not exceeding five years, and thereby made the offense a statute felony. *State* v. *Goddard*, 69 Maine, 181.

Crimes referred to in § 12, of c. 126, R. S., as punishable by imprisonment in the state prison, are such as are liable, by statute, to be thus punished, and not only such as must be thus punished. *State* v. *Mayberry*, 48 Maine, 236. .

EMERY, J. I. As to the admission of the testimony of Gray about threats made by the respondent to burn the building.

Evidence of prior threats by a respondent to do the particular act he is charged with doing, is clearly admissible. No citation of authorities is needed to establish this proposition. The threats testified to by Gray were threats to burn the same building the respondent was charged with burning. It is urged in the argument that the ownership of the building had changed between the time of the threats and the time of the burning. The bill of exceptions does not state any such change of ownership. If there had been such a change it would weaken the force of the evidence, but we doubt if it would entirely exclude it. The evidence would still have some tendency to prove some element of the crime charged, the act, the intent, the malice, or at least the disposition of mind of the respondent.

II. As to the presiding justice's statement in his charge of what was uncontroverted.

It is the duty of the presiding justice to present the case to the jury as plainly as possible. He should eliminate uncontroverted matters and distinctly point out the precise issues. If he errs in assuming a matter to be uncontroverted which a party intended to controvert, his attention should be called to the error before the jury retire, that he may make proper corrections. Rule XI. *Murchie* v. *Gates*, 78 Maine, 300. In this case no objection was made to the judge's statement of the controversy, and indeed the bill of exceptions states that no such contention was made as the counsel now suggests. We therefore assume that the controversy was correctly stated.

III. As to the expression in the charge upon the matter of the respondent's attempted *alibi*.

It is true, the respondent need not prove his *alibi* beyond a reasonable doubt. He may show where he was at the time the act was committed, and perhaps the farther off he was from the scene of action, the more doubt he raises as to his guilt. Still he may have participated, though at a distance, and hence distance is not a conclusive answer to the indictment, unless it be so great as to render it impossible for him to have participated in the crime. It appears from the charge (the whole charge being made a part of the bill of exceptions) that the respondent's counsel had claimed in his argument to the jury, there was "the most perfect proof of an *alibi*," while the testimony of the respondent's own witnesses showed that he was within twenty-five rods or thereabouts. The judge suggested to the jury to ascertain if the respondent was near enough to assist by giving warning or otherwise, and then in alluding to the counsel's claim that an *alibi* was proved, used the expression complained of. Counsel seemed to contend that proof of any distance was proof of *alibi*, and hence a conclusive answer to the indictment. The judge simply stated in effect, that to make mere distance a conclusive answer, as an *alibi*, it must be shown to be so great as to render it impossible for the respondent to have participated. This was correct.

IV. As to the Sunday proceedings.

It is settled in this state that a jury may deliberate on Sunday and may write out and seal up their verdict on Sunday. *True* v. *Plumley*, 36 Maine, 466. The weight of authority is in favor of the proposition that the court may receive a verdict on Sunday, the case having gone to the jury before Sunday. *Hoghtaling* v. *Osborn*, 15 Johns. 119 ; *Hurdekoper* v. *Collins*, 3 Watts, 56 ; *Baxter* v. *People*, 3 Gil. 368, cited with approval in *True* v. *Plumley* ; see also *Van Riper* v. *Van Riper*, 1 Southard, 176 ; *Webber* v. *Merrill*, 34 N. H. 202 ; *State* v. *Ricketts*, 74 N. C. 187 ; *Reed* v. *State*, 53 Ala. 502 ; see also notes to 12 Am. Dec. 291.

If the jury may deliberate on Sunday and write out and seal

up their verdict on Sunday, if the court may receive the verdict on Sunday, it would seem the presiding justice might on Sunday send blank forms to the jury with instructions to write out and seal up the verdict when agreed upon, without thereby invalidating the entire proceedings.

V. As to the sealing the verdict and the separation of the jury, before returning the verdict into court and there affirming it.

It was resolved by this court as reported in 63 Maine, 590, that in any criminal case, where the punishment was not death or imprisonment for life, the jury might lawfully seal up their verdict, when agreed upon, and might then separate during a temporary adjournment of court. In this case the judge, in his charge, had expressly instructed the jury that the evidence showed no person lawfully in the house at the time of the firing, and that they must so find. This lowered the grade of the offence, from one necessarily punishable by life imprisonment, to one only discretionally so punishable. No verdict could be recorded for the greater offence. It is contended by the state that the case, at the time of the giving the directions to seal up the verdict, was thus one within the resolution of the court above cited.

But however all this may be, and whatever might be our duty if the respondent had seasonably objected to what he now calls irregularities, it appears from his bill of exceptions that he and his counsel were present in court and saw all these things done and made no objection. No intimation was given to the presiding justice that the respondent or his counsel had any objection to any of these proceedings, or regarded them as possibly detrimental, or even irregular. An objection from the respondent would probably have prevented them. He probably saw no harm in them. They were not matters of substance. They were matters of purely formal procedure, which perhaps he might have insisted should be carried on after strict, ancient forms, but he did not so insist, nor even suggest. Having thus tacitly waived the irregularity, if any, and having permitted, without remonstrance, the court to order things for the admitted convenience of all persons concerned, he should not now have

these proceedings quashed and another trial ordered, unless it appears he was at least probably prejudiced by the alleged irregularities. After conscientious study and reflection upon the case, we are satisfied that no harm was likely to come to him, and none did in fact come to him from the proceedings now complained of.

VI. As to the direction of the presiding justice to the jury to sign and return the special finding.

This direction and the consequent special finding that no person was lawfully in the house at the time of the firing, was clearly for the benefit of the respondent. He did not object to it, and was not prejudiced by it.

*Exceptions overruled. Judgment on the verdict.*

PETERS, C. J., WALTON, DANFORTH, FOSTER and HASKELL, JJ., concurred.