## ELIJAH BARBER'S ADMR. *v.* ROBERT W. BENNETT.

*Res gestæ.    Declaration, when a part of.    Charge of court.*
*Parties.*

1. When the intestate, in paying money on account of the defendant, stated to the person to whom the payment was made that a portion of the money so paid was furnished by him, such declaration is not admissible on the part of the plaintiff in a suit against the defendant, by the administrator, to recover the amount so said to have been furnished. It is not a part of the *res gestæ.*

2. Neither is the memorandum book admissible, upon the margin of which the one to whom the payment was made minuted the information so conveyed to him by the intestate.

3. Where one, at the time of taking a promissory note, tells the maker that he shall leave it with a third party for collection, such declaration is not admissible in a suit against the third person for the amount of the note.

4. The court is only required to charge in substantial compliance with the requests of a party. *Held,* that there was such compliance in this case.

5. The defendant engaged board of the intestate in his family. After he began to board there, the intestate formed a partnership with J., in the carrying on of his farm, where the defendant boarded. By the terms of the partnership it was stipulated that the intestate should continue to have the entire benefit from the defendant's contract for board. *Held,* that J. need not be joined in a suit for such board.

This was an action of general assumpsit. Plea, the general issue, payment, set-off, and that as to the item for board and washing, Charles Jewett should have been joined as co-plaintiff. Trial by jury, at the December Term, 1888, Bennington County, TAFT, J., presiding. Verdict and judgment for the plaintiff. Exceptions by the defendant.

The plaintiff, among other things, sought to recover $175 for money furnished by the intestate to the defendant. It appeared that the intestate had paid to the Plunket & Barber Manufacturing Co. $200 in October, 1868, on account of the defendant. It was conceded that the intestate handed the money to the treasurer of the company. The defendant contended that the money

belonged to him, and that the intestate merely acted as his agent in the transaction. The plaintiff claimed that $25 was furnished by the defendant, and the remaining $175 was furnished by the intestate. As tending to substantiate this claim the plaintiff introduced the treasurer of the company, who testified that when the money was handed to him the intestate said that $25 belonged to the defendant and that $175 was provided by him, the intestate, and that he, the witness, placed the initials of the defendant and the intestate upon the margin of the account book upon which the transaction was entered, opposite these respective sums. The said book was offered and admitted in evidence.

The defendant claimed to recover in offset the amount of a note executed to him by one Moon, and by him, the defendant, passed over to the intestate, and proposed to show by Mrs. Moon, the wife of the maker, that the defendant told him, when the note was given, that he should leave it with the intestate for collection. The evidence was excluded.

The defendant married the intestate's daughter, who, being in ill health, returned to her father's house in the fall of 1867, the defendant going there soon after. Mrs. Bennett lived but a short time, and the defendant remained with the intestate and lived with his family from October, 1867, until October, 1870. Item No. 7 in the plaintiff's account was for the board, washing and horse keeping of the defendant for that time, nearly three years. The defendant did not deny his liability to pay the items charged, but claimed, and his evidence tended to show, that he was to pay by furnishing articles for the house, and hay, grain, etc., for the barn, and that when what he did in that respect was not satisfactory, he should be notified, and that no notice was ever given him. In April, 1868, the intestate made an arrangement with his son-in-law, Charles Jewett, to carry on his, the intestate's, farm, and Jewett and his wife went to the intestate's to live, April 1st, 1868, under said arrangement, and from that time until the defendant ceased living there, in October, 1870, the families of the intestate and Jewett lived in common, using the products of the farm in common. The defendant claimed that he paid

the item No. 7 in full, and that if not, the plaintiff could not recover that portion of it which accrued while Jewett and the intestate were carrying on the farm jointly and living as one family, for that the claim was a joint one in favor of the intestate and Jewett.  The evidence of the plaintiff tended to show that prior to the time that Jewett went to live with the intestate, it was agreed between them that the latter's trade with the defendant as to his living there should not be affected by the arrangement between the intestate and the defendant, and the intestate should have the pay for item No. 7.

Referring to the above state of facts, requests 6, 8 and 10 of the defendant were as follows :

6.  "That if the families of the plaintiff's intestate and Charles Jewett and the defendant lived together as one family, and the plaintiff's intestate and Jewett furnished the provisions and supplies for the support of that family, the plaintiff cannot recover in this action for the board of defendant, unless he establishes, by a fair balance of proof, an express contract and promise of the defendant to pay the intestate alone for the board.

8.  "That no recovery can be had upon the testimony in this case for the item of board and horse-keeping from the time that Jewett took the farm and furnished the supplies from the undivided products of the farm.

10.  "That if the defendant was boarding with Messrs. Barber and Jewett under contract, express or implied, that he should pay them for his board, they could not, by arrangement between themselves, give Barber or his administrator alone a right of action against the defendant, except by the direct promise of the defendant to pay Barber alone, or by such assent to the arrangement on his part as would amount to a promise."

As to the subject matter of these requests the court charged :

"The next item in the plaintiff's account in dispute is the last one, No. 7, under date of October 8th, 1870, and is for board and washing and horse-keeping for the defendant, from November, 1867, to October, 1870—$800.00.

"There is no controversy between these parties but that the defendant boarded with the plaintiff, or with him at first, and, after April, 1868, with the plaintiff and Jewett, his son in-law.  And there is no question made about the liability of the defendant to pay

that claim and account for it in some way. There is testimony tending to show that the price for the board was agreed upon. I am not certain, but I think there is no testimony in the case that the price for the horse-keeping was agreed upon, but there is testimony tending to show that $3 per week was spoken of and agreed upon by the parties as a suitable or reasonable price for the defendant to pay for his board.

"The charge is for board and washing and keeping of the horses. I am not aware that there was any evidence that tends to show that the washing was included with the board in the conversation that the parties had with reference to the price per week.

"If they agreed upon the price when the doctor went there to live, and he remained there after the talk in question, he must pay that price in some manner. If they agreed upon $3, that is the criterion that you must follow in saying how much the plaintiff is entitled to for that—whatever they did agree upon as the price.

"If they did not agree upon the price, and there is no testimony tending to show that they did, with reference to the horse-keeping at least, then he would be obliged to pay a reasonable sum, or the value in money for that which they did furnish him in that respect, and that is a question for you to say what a reasonable sum was, if you reach that question. The defendant claims, with reference to this item No. 7, that he made a contract with Elijah Barber, at some time immediately after the death of the defendant's wife, that he was to remain there and furnish supplies to pay for his board, and if at any time Mr. Barber became dissatisfied, that he should notify him—that he should be notified, and he claims that he never was notified—that no notice was given him with reference to the matter.

"If you find that that was the contract, that at the time he commenced boarding there, that he should board there without any price per week for his board and horse-keeping there, the law would say that he should pay a reasonable sum for that ; and if he never did have any notice that Mr. Barber was dissatisfied, then the plaintiff cannot recover, even if the defendant did not furnish enough to pay for his board.

"There is no claim made in the case, and there is no evidence tending to show, that he was ever notified that he was not furnishing enough to pay for his board ; and this would end this part of the case if you should find that that was the contract.

"If you do not find that he was to pay in that way, then if he did in fact pay enough, and that is for you to determine, and you have heard the evidence with reference to what he did furnish, and what he did pay, if any, in that respect, and if this was accepted in payment for his board without this notice, why, then the account would be extinguished, if there was no contract, and he did in fact pay enough.

"If you find that he in fact did pay—that he furnished enough there to pay for his board, and what he was indebted to them for his board and washing and horse-keeping, then, of course, he should not pay for it the second time. There is no question about the law in that respect, but the fact is for you to find whether this contract was made as he claims it, and that they never notified him ; but even if it was not made in that way, if he was to pay what the law says was a right and reasonable sum, and he did in fact pay that, then he should not pay but once. If you find the contract was different from the one claimed by the defendant, that he was bound to an agreed price or a reasonable sum, and you further find that he has not paid enough, then you should credit him with the value of what he has paid, and allow the plaintiff the balance.

"The defendant says that after the first of April, 1868, he is not bound to account to the plaintiff for his board after that date, but that the claim is one that belongs to the estate of Elijah Barber and Mr. Jewett. This contract was made, as the parties all agree, in October, 1867, this arrangement by which he boarded there, between the defendant and Mr. Barber. In April, 1868—the first of April—Mr. Jewett went to Mr. Barber's under some arrangement by which he was to carry on the farm, and they lived jointly together, and performed the contract that prior to that time Mr. Barber performed ; and the plaintiff claims that it was agreed in this arrangement with Mr. Jewett that this contract that he had made with the defendant the fall before should continue as he had made it, and that he should have the benefit of that ; that some arrangement was made by which that board should offset the board of the hired man—there is some testimony in that respect.

"Now, if that was the contract, whether the defendant knew of it or not, the plaintiff is entitled to recover, unless you find that item has been paid—that is, the plaintiff is entitled to it, instead of the plaintiff and Jewett.

" I think you understand what I have said in that respect. That if, at the time that Mr. Jewett made this arrangement, in the spring of 1868, to go there and carry on the farm, and it was agreed between him and the plaintiff that the contract between the plaintiff and defendant should continue and be carried out, and that the plaintiff would be entitled to the benefit of it, and the pay under it, whether the defendant knew it or not, —that as the contract was made with the plaintiff in reference to it, the plaintiff would be entitled to recover. If it was not so made—if that arrangement was not made between plaintiff and Mr. Jewett, then the plaintiff cannot recover for any part of that item which accrued after the time when Jewett went there, which, I think, as I said, was about the first of April, 1868."

The defendant excepted to the refusal of the court to charge as requested and to the charge as given.

*J. C. Baker, W. B. Sheldon* and *J. L. Martin,* for the defendant.

The evidence of the treasurer that the intestate declared, when he handed him the money, that $175 had been furnished by him, the intestate, was inadmissible. That declaration did not show the purpose of the payment, nor its application, nor had it any connection with the transaction of paying the money. *Bank* v. *Madden,* 114 N. Y. 280.

Still less are the entries upon the memorandum book, showing the ownership of the money, competent. *Lapham* v. *Eddy,* 35 Vt. 195 ; *Cross* v. *Bartholomew,* 42 Vt. 206 ; *Godding* v. *Orcutt,* 44 Vt. 54; *Barber* v. *Bennett,* 58 Vt. 476.

The plaintiff cannot recover in this suit for board after Jewett became a partner with the intestate in carrying on the farm. The liability of the defendant from then on, if any, was to the intestate and Jewett jointly, and he cannot be sued in the name of one. 1 Chit. Pl. (16 Ed.) 13 ; *Page* v. *Wolcott,* 15 Gray, 536; *Wiggins* v. *Cummings,* 8 Allen, 353.

*Batchelder & Bates* and *Loveland Munson,* for the plaintiff.

The evidence of the treasurer was properly admitted as a part of the *res gestæ.* This has been so held in this same case, 58 Vt. 476, and see further, 1 Greenl. Ev. 130, 132 ; *Elkins* v.

*Hamilton,* 20 Vt. 627 ; *Eastman* v. *Bennett,* 6 Wis. 232 ; *Ross* v. *Bank of Burlington,* 1 Aiken, 43 ; *White* v. *Morton,* 22 Vt. 15 ; *Fifield* v. *Richardson,* 34 Vt. 410 ; *Pollard* v. *Bates,* 45 Vt. 606 ; *Danforth* v. *Streeter,* 28 Vt. 490 ; *Roulston* v. *Roulston,* 64 N. Y. 652.

The memorandum book was simply in corroboration of the treasurer's testimony, and for that purpose admissible. *Soules* v. *Burton,* 36 Vt. 652 ; *Lapham* v. *Kelley,* 35 Vt. 195 ; *Cross* v. *Bartholomew,* 42 Vt. 206 ; *Mattocks* v. *Lyman,* 16 Vt. 113 ; 1 Greenl. Ev. 116, 117.

The fact that Jewett became a partner with the intestate in carrying on the farm does not render it necessary to join him as a plaintiff. The contract under which the defendant boarded was the same after as before. As a part of the contract of partnership between Jewett and the intestate the defendant never became indebted to Jewett. *Gardner* v. *Ins. Co.,* 33 N. Y. 421 ; *Ins. Co.* v. *Hobart,* 2 Troy, 543 ; *Boardman* v. *Kaeller,* 2 Vt. 65 ; *Hilliker* v. *Loop,* 5 Vt. 116 ; *Curtis* v. *Belknap,* 21 Vt. 433 ; *Leahey* v. *Allen,* 47 Vt. 463.

The testimony of Mrs. Moon was incompetent. The declaration was not connected with any material fact in controversy and so not a part of the *res gestœ.* Stark. Ev. 88 ; *Elkins* v. *Hamilton,* 20 Vt. 627 ; *Burrows* v. *Stevens,* 39 Vt. 378 ; *Tompkins* v. *Reynolds,* 17 Ala. 109 ; *Tatham* v. *Wright,* 7 E. C. L. 313 ; *Noyes* v. *Ward,* 19 Conn. 250 ; *Lund* v. *Tyngsboro,* 9 Cush. 36 ; *Barnum* v. *Hackett,* 37 Vt. 77.

The opinion of the court was delivered by

Ross, J. In 1868 the intestate paid to D. J. Barber, the treasurer of the Plunket & Barber Manufacturing Company, to be placed by the company to the credit of the defendant, the sum of $200. The treasurer credited this sum in two items, one of $175 and the other of $25. In the margin, against the first-named sum, the treasurer had minuted "E. B.," and against the $25, "self." Against the exception of the defendant, D. J. Barber, a witness for the plaintiff, was allowed to tes-

tify, as a part of the *res gestœ*, that the intestate told him, when he paid this money and directed its application to the credit of the defendant, that he furnished from his own resources the $175, and the defendant the $25, and that was the meaning of the words entered by him in the margin. As this declaration of the intestate, so far as it relates to the $25, was against his interest and in favor of the defendant, the defendant had the right to have it put in evidence in his favor, and has suffered no wrong or harm, when it was put in by the plaintiff against his exception. This testimony, so far as it relates to the $175, bore directly in favor of the plaintiff's claim, that the estate was entitled to recover this item from the defendant, because it had been paid by the intestate from his own money, and against the claim of the defendant, that the intestate paid this $175 with money furnished by the defendant. It is to be observed that the *res gestœ*, or thing being done, was the payment of money by the intestate to the company, to be applied to the credit of the defendant. From the nature of the transaction, the intestate was making the payment as the agent of the defendant. Says Mr. Greenleaf, in his work on evidence, Vol. I., s. 114, "The rule admitting the declarations of the agent is founded upon the legal identity of the agent and the principal; and, therefore, they bind only so far as there is authority to make them. Where this authority is derived by implication from authority to do a certain act, the declarations of the agent, to be admissible, must be a part of the *res gestœ*," and in note 2, "By being a part of the *res gestœ* is meant that such declarations are evidence only where they relate to the identical contract that is the matter in controversy." Perhaps this last sentence would more accurately state the law of the subject if, instead of the words "contract" and "controversy," the words "business" and "transaction" were substituted. The business which the intestate was transacting as the agent of the defendant was the payment of money to the company, to the credit of the defendant. As held when this case was before the court, as found in the 58th Vt. 476: "It was allowable as a part of the *res gestœ* to show the purpose

for which the money was paid, by the direction or declaration of the party paying it." The intestate's declarations to this extent are clearly a part of the business which he was transacting for the defendant, and admissible under the rule, as stated from Greenleaf on Evidence. As then reported, the exceptions do not distinctly raise the question now before this court, and the court expressed no opinion upon it. The exceptions in that case state quite fully what was shown in regard to the $25, but very meagerly what was allowed to be shown in regard to the $175. Hence that decision does not conclude this question. From what has been said it is very evident that whether the intestate or the defendant furnished the $175 was no part of the business being transacted by the intestate as the express or implied agent of the defendant, when paying that sum to the Plunket & Barber Manufacturing Company, and directing its application to the credit of the defendant. The declaration of the intestate that he furnished that sum to the defendant related, not to the business which he was transacting with the company as the agent of the defendant, but to another and distinct transaction between the intestate and the defendant. It is open to the full force of the objection to hearsay testimony. It was a declaration by the intestate wholly in his own favor, and related solely to a transaction between himself and the defendant. *Godding* v. *Orcutt*, 44 Vt. 54. Neither the declaration of the intestate that he furnished this sum of money, nor the witness' memorandum, written on the margin of the entry, which refreshed his recollection of what the intestate said in regard to his furnishing the defendant this sum, was admissible.

It is well settled in this State that a witness may be allowed to refresh his recollection of what transpired by memoranda made in writing at the time or soon after, and that such memoranda may, if otherwise unobjectionable, be allowed to go to the jury for examination, inspection and consideration, not as independent evidence of the facts minuted, but as corroborative of the testimony of the witness. Hence, if the witness could properly testify to the fact in regard to which the marginal entry

refreshed his recollection, that entry might properly have gone to the jury. But the witness' testimony on this point being inadmissible, the entry was also inadmissible.

II. The evidence of Mrs. Moon was properly excluded. To be admissible as a part of the *res gestæ*, of the delivery of Moon's note by the defendant to the intestate, the declaration of the defendant offered to be shown should accompany the act of his delivery of the note. No such delivery was offered to be shown.

III. The defendant's exceptions to the failure of the court to comply with his requests to charge are not sustained. The exceptions show that his requests numbered 1, 2 and 3 were not applicable to the case made by the testimony. Requests numbered 6, 8 and 10 were in substance complied with so far as they contain an accurate statement of the law applicable to the issues made by the pleadings and evidence. No more than a substantial compliance with such requests is required. This disposes of all the exceptions now relied upon by the defendant.

*The judgment of the County Court is reversed and the cause remanded.*

Munson, J., having been counsel, did not sit.