## WILFRED STE. MARIE *v.* E. O. WELLS.

### May Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and
MOULTON, SUPR. J.

#### Opinion filed October 7, 1919.

*Fraud—Reliance On Representations—Inferred from the Circumstances—Jury Question—Purchaser's Right to Rely Upon Representations—Sufficiency of Evidence.*

The question raised by an exception to the submission of a case to the jury on the ground that there is no evidence, is the same as if it had been raised upon a motion for a verdict.

In an action for deceit, reliance upon defendant's representations need not be proved by direct evidence, but may be inferred from the circumstances; and where the representations were material and calculated to induce the plaintiff to take a certain course of action with regard to their subject-matter, the question whether he relied thereon in so doing was for the jury.

The plaintiff had a right to rely upon the false representations of the defendant although he could have discovered their falsity by an investigation.

Although the plaintiff did not directly testify that he relied upon the false representations of the defendant in purchasing the farm in question, his testimony that he took defendant's word when the latter said that he would later show him certain material things about the farm, taken in connection with the evidence of the misrepresentations themselves, was sufficient to warrant the jury in finding that the plaintiff did rely upon them in making the purchase.

ACTION OF TORT for fraud in the sale of a farm, and a count in trover. Plea, the general issue. Trial by jury at the March Term, 1918, Orleans County, *Slack,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*E. A. Cook* and *W. W. Reirden* for the defendant.

*Frank D. Thompson* for the plaintiff.

MOULTON, Superior Judge. This is an action in tort for deceit in the sale of a certain farm by defendant to plaintiff, with a count for the conversion of certain personal property. Trial was had by jury, with verdict and judgment for the plaintiff. The case is here on exceptions by defendant.

The defendant excepted to the failure of the trial court to instruct the jury in accordance with six requests to charge made by him. It appears that these requests were not submitted to plaintiff's counsel before the opening argument for defendant as required by County Court Rule 30. But it is unnecessary to pass upon the effect of this rule because nothing is claimed under these exceptions beyond what is presented by the exception to the charge as given, presently to be considered, which is the only other exception relied upon.

This exception was taken in the following language: "We except to the submitting to the jury of any question upon the matter of fraudulent representations, because we say there is no evidence that plaintiff relied upon any of the representations." The ground of this exception is general. If, therefore, there is any substantial evidence fairly and reasonably tending to show reliance by the plaintiff upon any one of the various representations here in question, the objection will not avail. In this respect the question is the same as if it had been raised upon a motion for a verdict. *Schofield's Admx.* v. *Metropolitan Life Ins. Co.*, 79 Vt. 161, 167, 64 Atl. 1107, 8 Ann. Cas. 1152; *French* v. *Grand Trunk Ry. Co.*, 76 Vt. 441, 444, 58 Atl. 722. And so the question here is: Was there substantial evidence from which, if believed, and excluding the effect of modifying evidence, the jury could reasonably infer that the plaintiff relied upon the defendant's representations or any of them? *Bass* v. *Rublee,* 76 Vt. 395, 400, 57 Atl. 965; *Latremouille* v. *Bennington & Rutland Ry. Co.,* 63 Vt. 336, 344, 22 Atl. 656. Such reliance was, of course, a necessary element of plaintiff's cause of action. *Weeks* v. *Burton,* 7 Vt. 67, 70.

The plaintiff did not testify in terms that he acted in reliance upon defendant's representations in the purchase of the farm. But there is ample authority for the proposition that the fact of reliance need not be proved by direct evidence, but may be inferred from the circumstances; and where the representations complained of are material and of a nature calculated to induce the person to whom they are made to take a cer-

tain course of action with regard to the subject-matter of the representations, the question whether he relied thereon in so doing is one of fact for the jury. *Nash* v. *Minnesota Title Ins. & Trust Co.*, 156 Mass. 437, 443, 34 N. E. 625; *Smith* v. *Chadwick* (1884) 9 App. Cas. 184, 196; *Hughes* v. *Twisden,* (1886) 55 L. J. Ch. 481; *Arnison* v. *Smith,* (1888) 41 Ch. Div. 348, 369. The rule is aptly stated by Lord Blackburn, in *Smith* v. *Chadwick, supra,* at page 196, as follows: "I think that if it is proved that the defendants with a view to induce the plaintiff to enter into a contract, made a statement to the plaintiff as would be likely to induce a person to enter into a contract, and it is proved that the plaintiff did enter into the contract, it is a fair inference of fact that he was induced to do so by the statement. * * * * I quite agree that being a fair inference of fact, it forms evidence proper to be left to a jury as proof that he was so induced." The learned judge remarks elsewhere in the course of the same opinion: "I do not think that it is necessary * * * * that the plaintiff should be called as a witness to swear that he acted on the inducement. At the time *Pasley* v. *Freeman* was decided and for many years afterwards, he could not be so called." *Pasley* v. *Freeman,* 3 T. R. 51, 12 Eng. Rul. Cas. 235, it will be remembered, is the case generally regarded as the foundation of the modern law of actionable misrepresentation. At the time that decision was rendered (1789) the parties to a suit were by the common law disqualified as witnesses because of their interest in the outcome of the litigation. 1 Wigmore, Evidence, par. 575; Lord Bowen, "Progress in the Administration of Justice during the Victorian Period," Select Essays in Anglo-American Legal History, Vol. 1, 516, 521. So it appears that the principle that reliance, in fraud cases, might be inferred from the circumstances was one of early inception.

*Redgrave* v. *Hurd,* (1881) 20 Ch. Div. 1, went to a greater length in the treatment of this subject than did the other decisions cited above. In that case it was said by Jessel, M. R., at page 21, that "where a person makes a material representation to another to induce him to enter into a contract, and the other enters into that contract, it is not sufficient to say that the party to whom the representation was made does not prove that he entered into the contract relying upon the representation. If it is a material representation, calculated to induce him to enter into the contract, it is an inference of law that he was

induced by the representation to enter." But this doctrine was disapproved in the English cases cited in the foregoing paragraph, and, it may be noted, the Master of the Rolls himself recanted in *Smith* v. *Chadwick,* (1882) 20 Ch. Div. 27, 44, and *Matthias* v. *Yetts,* (1882) 46 L. T. 497, 502, holding therein that the inference to be drawn in such a case is one of fact and not of law.

In the case now under consideration, the evidence, taken in the light most favorable for the plaintiff, tended to show the following facts: Plaintiff was a French-Canadian, and unable either to read or write English, although he had resided in this State for three or four years next previous to the transaction in question. Having heard that defendant desired to sell his farm, he went there and had a talk with defendant in regard to the proposed sale, but did not then reach any agreement as to the terms, because he had not enough money to make the payment in cash required by defendant. At this meeting plaintiff did not inspect the farm. A few days later he again went there, and with defendant made a partial inspection. It was at this second visit that the defendant made the representations complained of.

The farm consisted of two hundred and thirty acres, and was originally two farms, one being known as the Kidder Farm and the other as the Hancock Farm. There was also a back lot of fifty acres, partly pasture and partly wooded. Some time before the sale to the plaintiff, defendant had sold to the Black River Bobbin Company all of the hardwood timber on the fifty-acre lot, and at the time of plaintiff's second visit to the farm all of this kind of timber had been cut, and there were about fifty thousand feet of hardwood logs, the property of the Bobbin Company, and worth about three hundred dollars, piled on the land. There were between ten and fifteen hundred feet of spruce, not included in the sale to the Bobbin Company, standing on the lot.

The running water in the tub in the cow yard, and in the bathroom in the house, was taken from a small reservoir, or so-called spring, beside a brook situated on the land of one Don Carpenter. At one time the defendant had piped the water from a spring near the sugar house on his own land, but several years before the sale to the plaintiff the supply from this spring became unsatisfactory, and defendant, with the oral consent of the administrator of Carpenter's predecessor in title, laid a pipe

from the reservoir on the latter's land.   After Carpenter acquired title, this arrangement was continued by the latter's oral permission, with the tacit understanding that Carpenter might have, in return for the water privilege, the right to cross a field belonging to defendant's farm.   When defendant laid the pipe above described he took up the pipe running from the spring near his sugar house.

Upon the occasion of plaintiff's second visit to the farm the parties did not go upon the wooded portion of the fifty-acre lot.   From the lower, or pasture, part where they stood it was impossible to see whether there was any large timber standing, or any logs cut and piled, upon the upper, or wooded, part.   While there defendant stated to plaintiff that there was a sufficient quantity of timber and logs on the lot half to pay for the farm, and that there were enough logs already cut to make a big payment.   Nothing was said by defendant regarding the prior sale of the timber to the Black River Bobbin Company, nor that the logs were the property of the company.   Plaintiff knew nothing of these facts until after the deed of the premises had been executed and delivered to him.

Upon the same occasion plaintiff asked to be shown the spring supplying the tub in the cow yard and the location of the pipe, so that he might know where to make repairs in the event of an accident to the water supply.   Defendant thereupon pointed toward the sugar house and said that the spring was there, that it was a good spring, and the best running spring in the town of Irasburg.   Plaintiff than asked again to be shown the spring, but defendant said, "Let's make the trade," and took plaintiff to see a corner post.   Defendant did not inform plaintiff that the water was taken from the Carpenter property, and was not running from the spring near defendant's sugar house, nor that Carpenter had, by tacit agreement in return for the license to take water from his brook, a right of way across the field.   These facts first came to the knowledge of plaintiff after the trade had been consummated and the deed passed.   He then inquired of defendant why he did not tell him that the source of the running water did not belong to him, and the latter replied only that he was not obliged to tell him whether it did or not.   Subsequently to the sale of the farm defendant unsuccessfully endeavored to purchase the water supply from Carpenter for the plaintiff.

During the inspection of the premises on plaintiff's second visit to the farm defendant represented to him that the buildings were in need of little repair, and that the farming tools included in the trade were in good. condition. Plaintiff did not go into the basement of the barn, and the floor of the barn was covered with chips and rubbish so that the condition of the boards could not be seen. In fact the basement walls and underpinning were in bad condition, and the flooring required replacement in order to be safe. The farming tools were in a dark shed, and when told that they were in good condition, plaintiff replied that that was all right, as he liked good tools to work with, and made no further examination.

Plaintiff inquired of defendant as to the fences, and defendant answered that he had good wire fences all around the farm. Plaintiff then said: "All right, I am glad of it, if it is a good fence"—and made no inspection. In fact the fences were not all wire, in places there were no fences, and part of the fenc-ing was insecure and required replacement.

A part of the farm was leased land, under a perpetual lease known as the "Beauclerk Lease," and subject to a rent charge of twenty-three dollars and fifty cents a year. Nothing was said about this lease by defendant, and plaintiff was ignorant of its existence until the time of the execution of the deed. In reply to an inquiry by plaintiff, defendant stated that the annual taxes were sixty-five dollars, whereas they were really one hundred and twenty dollars in addition to the rent charge of twenty-three dollars and fifty cents mentioned above.

The purchase price of the farm and personal property was nine thousand two hundred and fifty dollars. The Carpenter water right was worth one thousand dollars to the farm, and the farm and personal property would have been worth nine thousand dollars if they had been as represented, but were actually worth six thousand dollars.

During his cross-examination, in reply to the question why he did not go up to the back lot to see the logs piled thereon, plaintiff testified that: "He (the defendant) wanted to go to Irasburg and we was in a hurry, and he says, 'I will spend another day when trade be all done'; he says, 'I will come up a day, and I will show you everything'; he says 'I will spend a day or two if I have got to'; and he says 'I will show you everything, the corner fence and the spring and everything,' he says; and I says 'All right.' I took his word."

No doubt the falsity of the foregoing representations could have been discovered by plaintiff by a careful examination of the premises. But he was not required to make an examination, and had the right, under the circumstances, to rely upon the statements made to him. *Crompton* v. *Beedle*, 83 Vt. 287, 300, 301, 302, 75 Atl. 331, 30 L. R. A. (N. S.) 748, Ann. Cas. 1912 A, 399; *Maidment* v. *Frazier*, 90 Vt. 520, 527, 98 Atl. 987.

It is considered that the representations detailed above were material and in their nature calculated to induce the plaintiff to rely upon them in entering into the transaction with the defendant. Significance is added by plaintiff's testimony that, when defendant said he would later show him the corner fence, the spring and everything, he took the latter's word, and what plaintiff said in reply to the statements of defendant regarding the tools and fences. Without saying that this testimony of the plaintiff, standing alone, would be enough to justify the submission of the question to the jury, it is clear that, taken in connection with the evidence as to the representations themselves, there was sufficient to warrant the jury in finding that plaintiff did rely upon them in making the purchase. The question was, therefore, properly submitted to the jury, and defendant's exception is without force.

*Judgment affirmed.*