W. O. JOHNSON *v.* HARDWARE MUTUAL CASUALTY CO.

February Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed October 4, 1938.

482

484

486

488

*Herbert G. Barber,* and *Edwin W. Hadley,* of Boston, Mass., for the defendant.

*Wilson, Carver, Davis & Keyser* for the plaintiff.

POWERS, C. J. ██ ██ When the case was reversed and remanded by this Court, *Johnson* v. *Hardware Mut. Casualty Co.,* 108 Vt. 269, 288, 187 Atl. 788, the rescript contained the following provision: "* * * with leave to apply for an amendment if plaintiff be so advised." This being so, it did not stand in the county court like the ordinary case remanded by us. Strictly taken the first step to be taken by the plaintiff in that court, was to apply for and obtain leave to amend the complaint; and until that was done, the case was not for trial. The plaintiff did not take this view of it. He considered that the case was in the county court and subject to its rules. He treats it here as a case covered by county court rule 14, par. 3, which provides that, on continuance of a case, either party may amend his pleadings within one month from the rising of the court. But whatever irregularity or fault adhered in the course taken by court or counsel in that regard was cured by the subsequent proceedings.

The record shows that the question of amendments was heard before a single superior judge, who, upon consideration, allowed amendments to be made, and it was before the county court, which, upon consideration, allowed further amendments to be made. The defendant appeared and participated in both of these hearings. So we think that its rights have been sufficiently protected, and its exceptions to these allowances are overruled.

The defendant insists that the amended complaint is duplicitous, repetitious, prolix, obscure and uncertain, and for these reasons it should be stricken and expunged in its entirety. But these are faults of form only; and it is expressly provided in the Practice Act that a pleading shall not fail for want of form, and that the sufficiency of pleadings in this respect shall be for the discretionary determination of the trial court. P. L. 1578. We find nothing here warranting further comment.

The defendant vigorously and confidently maintains that the amendments allowed by the court introduce a new cause of action. If the defendant is right in this contention, the amendments were erroneously allowed, for the Practice Act does not protect them. *Burleson* v. *Fox,* 101 Vt. 225, 228, 143 Atl. 298, and cases cited.

It has been thought that the determination of this question of the identity of the cause of action in different counts is attended with some difficulty. But it should not be in this jurisdiction, for it has been passed upon in many cases. We have repeatedly and correctly said that ''the true test is whether the proposed amendment is a different matter or the same matter more fully or differently laid.'' *Schlitz* v. *Lowell Mutual Fire Ins. Co.,* 96 Vt. 337, 340, 119 Atl. 513, 514; *Patterson's Admr.* v. *Modern Woodmen of America,* 89 Vt. 305, 312, 95 Atl. 692; *Davis' Admx.* v. *Rutland R. R. Co.,* 82 Vt. 24, 29, 71 Atl. 724. The rule thus expressed traces back to *Daley* v. *Gates,* 65 Vt. 591, 592, 27 Atl. 193, where it is thus stated: ''The test is whether the proposed amendment is a different matter, another subject of controversy, or the same matter more fully or differently laid to meet the possible scope and varying phases of the testimony.'' And Judge Rowell there said: ''An amendment cannot be allowed that introduces a new cause of action. But as long as the plaintiff adheres to the contract or the injury originally declared upon, an alteration of the modes in which

the defendant has broken the contract or caused the injury is not the introduction of a new cause of action." In *Slayton* v. *Davis,* 85 Vt. 87, 89, 81 Atl. 232, we said, in effect, that the "cause of action"—the "matter" referred to in the rule—is the facts which give rise to a right of action. Apply this rule to the case in hand: The original action was predicated upon the failure of the defendant to settle the case of *Rule* v. *Johnson,* 104 Vt. 486, 162 Atl. 383, before it went to trial in the county court. That is what the plaintiff complained about when he brought this suit against the defendant. That is just what he is complaining about now. He characterized that failure as negligence then; he characterizes it as bad faith now. The fundamental facts in the original complaint are the same as those in the amended complaint. The "matter" of the two complaints is the same. The "subject of controversy" is the same. Whatever terms you may use, the cause of action was not changed, and the amendments were properly allowed.

The defendant, by its policy regularly issued, insured the plaintiff against liability for personal injuries and property damage due to his ownership and use of his automobile. The plaintiff was involved in an accident while driving his automobile and suits for damages were brought against him. Negotiations for a settlement of these suits failed, and a trial in Windsor county court resulted in a verdict much larger than the coverage of the policy, and the plaintiff had to pay out of his own pocket.

It is for the recovery of the sum so paid that the plaintiff brings this suit.

When the plaintiff accepted the policy referred to, he surrendered to the defendant the complete control and management of any suit that might be brought against him for any claim which would involve liability on the part of the company. It was so stipulated in the policy. This is unquestionably so up to the limit of the coverage of the policy, though the plaintiff may have had a right to buy his peace as to any damages above that coverage.

When the company accepted the premium charged for the policy, it impliedly undertook to use this control and management for the mutual benefit of the parties to the contract. Their relations became mutually fiduciary; and each owed the other the duty of the utmost good faith in their dealings to-

gether, and in exercising the privileges and discharging the duties specified in and incident to the policy contract. The plaintiff engaged to cooperate with the company if a loss threatened. He was bound to do so honestly and with all good fidelity. The company was equally bound so to handle the Rule case. It had a right to look after its own interests, but it was bound to have due regard for the plaintiff's interests, as well. If in what it did and refused to do it acted honestly and according to its best judgment, this suit must fail. If, on the contrary, it used its authority over the case of *Rule* v. *Johnson, supra,* to save itself from as much of the loss as possible, in disregard of the plaintiff's rights, consciously risking loss to the plaintiff to save loss to itself, the suit must succeed; for that would be bad faith, while its relation to the plaintiff demanded good faith. As applied to this case, bad faith on the part of the defendant would be the intentional disregard of the financial interests of the plaintiff in the hope of escaping the full responsibility imposed upon it by its policy.*

This definition is supported by the decisions in *Hilker* v. *Western Automobile Ins. Co.,* 204 Wis. 1, 231 N. W. 257, 235 N. W. 413, 414, 415; *Mendota Electric Co.* v. *New York Indemnity Co.,* 169 Minn. 377, 211 N. W. 317, 318; *Maryland Casualty Co.* v. *Cook-O'Brien Construction Co.* (8th Cir.), 69 Fed. (2d) 462, 464; *Maryland Casualty Co.* v. *Elmira Coal Co.* (8th Cir.), 69 Fed. (2d) 616, 618; *American Mutual Liability Ins. Co.* v. *Cooper* (5th Cir.), 61 Fed. (2d) 446, 448; *Noshey* v. *American Automobile Ins. Co.* (6th Cir.), 68 Fed. (2d) 808, 810; *Aycock Hosiery Mills* v. *Maryland Casualty Co.,* 157 Tenn. 559, 11 S. W. (2d) 889, 892. Reference may also be had to the minority opinion in *City of Wakefield* v. *Globe Indemnity Co.,* 246 Mich. 645, 225 N. W. 643, 645, which states the law to the approval of the majority, the dissent being upon the application of the facts.

The issue raised by the defendant's exception to the denial of its motion for a directed verdict was whether there was substantial evidence from which, if believed, and excluding the effect of modifying evidence, the jury could reasonably infer that the defendant acted in bad faith in the manner alleged. *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 108 Atl. 270. In passing upon this question we view the evidence in the most favorable

light for the plaintiff. *Higgins* v. *Metzger,* 101 Vt. 285, 291, 143 Atl. 394. We do not pass upon the credibility of the witnesses, because the tendency of the evidence and not its weight is to be considered. *Cummings* v. *Insurance Co.,* 101 Vt. 73, 85, 142 Atl. 82. If there is evidence fairly and reasonably tending to support the plaintiff's claim it is immaterial to the motion that such evidence is contradicted, for contradictions and opposing inferences are for the jury. *Comeau* v. *Manuel & Sons Co.,* 84 Vt. 501, 509, 80 Atl. 51. And so, too, when the testimony is not impossible, although it may be unreasonable or inconsistent. *Robey* v. *Boston & M. R. R.,* 91 Vt. 386, 388, 100 Atl. 925. Therefore in deciding this issue we do not consider that portion of the defendant's brief which is devoted to a discussion of the credibility of the plaintiff.

Under the policy of liability insurance issued by the defendant to the plaintiff the latter was protected against the claim of one person for injuries to the extent of $5,000; if a single accident caused injuries to more than one person the total limit was $10,000, with no more than $5,000 to any one person injured. The property damage was limited to $5,000. In the accident here involved five persons were injured, William Rule and four boys riding with him, and the truck which he was driving was damaged. Rule brought suit against the plaintiff herein and, in accordance with its obligation under its contract, the defendant company undertook and conducted the defense. During the trial an offer was made by the attorneys representing Rule to accept $5,500, which was understood to be in settlement for all the claims, including the property damage, arising from the accident. The offer was refused, the defendant declined to pay more than $3,500 for all claims, the offer was withdrawn and the trial proceeded to verdict and judgment for $14,000 for Rule's claim alone. The bad faith alleged is the refusal to accept the offer of settlement.

Much of the evidence upon the trial now under review was the same that was introduced upon the first trial. In the previous opinion in this cause (108 Vt. 269, 283-288, 187 Atl. 788), in connection with the plaintiff's motion for a remand so that he might apply for leave to amend his complaint, the tendency of the evidence is given at length and there is no need to repeat it in detail. Further testimony, a part of it by way of the deposi-

tions of two of the officials of the defendant company, was also given. From a consideration of all of the evidence, taken most favorably for the plaintiff, it was reasonably possible for the jury to find the following facts: From the commencement of the trial an adverse verdict was anticipated by Raymond Trainor, the experienced counsel retained by the defendant company, and by Paul J. McDonald, the adjuster in attendance, and the plaintiff herein was so informed. Evidence was produced on behalf of Rule, bearing upon liability and damages, which was previously unknown to, and unanticipated by, both counsel and adjuster, and, in view of this, the former advised the latter that unless a settlement should be effected at $5,500 the verdict would be larger than the offer—and, in his own expressive phrase, a "whopper." The adjuster attempted to persuade the plaintiff to contribute $500 to the settlement—which, as we have seen, was understood to include all the claims arising from the accident, and was below the limit set by the policy as covering more than one claim—and upon the latter's refusal to do so, said to him: "If I can't make more than that out of it, I will let it go. It will go for $12,000 with the jury." The claims of the four boys were estimated by the adjuster at $200 each, in addition to the property damage. In fact, the claim of one of the boys was later settled at this figure, and what, if anything, was paid the others did not appear, and the property damage was settled at $300. The plaintiff urged a settlement for $5,500 calling attention to the fact that it was within the policy limit, and, finding his insistence of no avail, gave written notice to the defendant that if the case should not be settled and result in a larger verdict, he would hold the company liable for the amount no matter how large. The adjuster made frequent telegraphic reports to the home office of the defendant, giving information as to the evidence, saying that the case was dangerous, the atmosphere of the trial was unfavorable, and strongly advising the acceptance of the offer to $5,500. He did not, however, inform the defendant that a verdict exceeding the policy limit was probable. The reply of the latter was "believe $3,500 for all cases sufficient."

From the depositions of two officials of the company, who had charge of, and authority to settle, the claim, it appeared that the settlement value of the Rule case alone was estimated, by the suits examiner, at $3,000-$4,000, and by the vice-president and

494

claims manager, at approximately $3,500 or at most $4,000. Both witnesses agreed in stating that it was the settled policy of the company never to call upon an insured to contribute anything toward a settlement which was within or equal to the policy limit, and to pay up to the policy limit if there should be a remote possibility that the verdict would equal or exceed such limit. The vice-president deposed that he was anxious to protect the plaintiff to the full extent of the policy and to avoid any possibility that the latter would be personally obliged to pay any sum in excess of the policy.

██ ██ Do these facts support a reasonable inference of bad faith on the part of the defendant, or do they merely signify an honest mistake of judgment? Bad faith is, of course, a state of mind, indicated by acts and circumstances, and is provable by circumstantial as well as direct evidence. *Johnson* v. *Hardware Mutual Casualty Co.*, 108 Vt. 269, 286, 187 Atl. 788; *Sowder* v. *Lawrence*, 129 Kan. 135, 281 Pac. 921, 923. Each case must stand and be determined upon its particular state of facts. *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1, 231 N. W. 257, 260, 235 N. W. 413. While there is diversity of opinion among the several courts before whom a variety of circumstances has been presented, we may call attention to the recent decision in *Maryland Casualty Co.* v. *Cook-O'Brien Construction Co.* (8th Cir.), 69 Fed. (2d) 462, which presents a somewhat analogous situation to the present cause. It appeared therein that the representative of the insurer, before the trial, said that he realized that the plaintiff therein was badly injured, that it was a dangerous case and should not go before a jury, and that it should be settled; that he would agree to pay $3,500, a sum less than the policy limit which the injured party offered to accept, but that the insured would have to contribute $1,000 to this amount; and that, in his opinion, the judgment would be in excess of the policy limit. The insured informed him that it did not want to go to trial, but desired a settlement, and insisted upon the payment of $3,500 by the insurer, which was refused. The trial resulted in a verdict far beyond the policy limits. The judgment was set aside on appeal, and when the second trial commenced there was an offer on behalf of the injured party to settle for $6,500 which was not accepted, the evidence being conflicting upon the question whether this opportunity was lost through the

fault of the insurer or the fault of the insured in failing to contribute the excess over the policy limit. Another verdict beyond the limit was rendered. The court said (p. 467): "We are satisfied that there was, on the whole, sufficient testimony from which reasonable men would be justified in drawing the inference that the casualty company's failure to settle the Crawford claim was not in good faith in the exercise of an honest discretion and judgment, but was in bad faith, in breach of the duty it owed to its insured, under the relationship arising from its taking control pursuant to its policy agreement."

It was, as we have seen, the established policy of the defendant to settle a claim rather than to meet the possibility of a verdict beyond the limits of the insurance contract; and in view of this, the failure of the adjuster to inform the home office that such a verdict was not only possible, but expected, was evidence from which the jury could infer that the requisite good faith was not exercised. Such probability, if reported, might well have caused the acceptance of the offer of settlement. The adjuster was the agent of the defendant and his knowledge and conduct were chargeable to his principal. Although he telegraphed to the home office, "if more details needed, wire immediately," no additional information was requested. Good faith required a full report of all facts bearing upon the matter of settlement and a decision based upon all such facts.

In the previous opinion in this cause (108 Vt. 269, 287, 187 Atl. 788), we said that the statement of the adjuster, upon the refusal of the plaintiff to contribute to the settlement, "If I can't make more than that out of it, I will let it go. It will go for $12,000 with the jury," was evidence tending to show bad faith. See, also, Brown & McCabe Stevedores, Inc. v. London Guaranteee & Accident Co. (D. C.), 232 Fed. 298, 299. The adjuster denied making this remark, but, since the evidence was conflicting, it was open to the jury to find that he had done so.

Although some of the other circumstances standing alone might not warrant a finding of bad faith, all of the evidence, taken together, made a question for the jury upon this issue. There was no error in denying the motion for a verdict.

The defendant offered in evidence the depositions of two of its officials, which were received, with the exception of

certain parts stricken out upon the plaintiff's motion, subject to the defendant's exceptions.

It is unnecessary to consider these questions separately. An examination of the deleted portions shows that they consisted in part of unresponsive answers, and of matters which, while they might with propriety have been allowed to stand, were of such slight importance that no prejudicial error is made to appear.

Several exceptions were taken to the refusal to permit several witnesses to testify that they had never seen any communication from the home office of the defendant showing ill will, malice, hatred or a desire to injure the plaintiff; or any word or act on the part of any representative that indicated bad faith. That the questions called for the opinion of the witnesses, and so were properly excluded, is too plain to require further comment.

The defendant seasonably presented twenty-six written requests for instructions and excepted to the noncompliance with twelve of them.

The first request was that no breach of the insurance contract was charged or claimed. All that is said concerning it in the defendant's brief is that it was error to refuse it as appears by the record and the request itself. This is inadequate briefing, and is alone sufficient to remove the exception from our consideration. *Dailey* v. *Town of Ludlow*, 102 Vt. 312, 315, 316, 147 Atl. 771. However, the subject was adequately covered by the charge as given, wherein it was said that the cause was not founded upon a claimed breach of the defendant's contract contained in the policy.

Request 6-A was that the presumption was that the defendant acted in good faith. The court charged that "bad faith is never presumed." This was a substantial compliance with the request, and, indeed, went farther than was necessary. *State* v. *Lizotte*, 109 Vt. 378, 197 Atl. 396, 400.

Requests 7, 8, 9 and 10 dealt with the rights and liabilities of the parties regarding settlement, within and without the policy limits, and were adequately stated when the court explained the provisions and limits of the policy.

Request 11 was that in settling or refusing to settle the defendant company "was not bound to consult the interest of the insured to the prejudice of its own interests in case of a

conflict between the two.'' The only argument put forward in support of this request is that it ''is taken from *Long* v. *Indemnity Co.* (1931), 277 Mass. 428, 178 N. E. 737, 79 A. L. R. 1116, which in turn quotes the statement from several other states. Its substance ran through the previous decision of this Court on this case.'' We are unable to discover wherein our former opinion lends support to the broad proposition involved in this request, as applicable here. It could not have been properly given without qualification, because, as is said in *Wisconsin Zinc Co.* v. *Fidelity & Deposit Co.*, 162 Wis. 39, 155 N. W. 1081, 1087, Ann. Cas. 1918C, 399, ''while the defendant had the right to consult what it deemed to be its own interest in making a settlement, it could not abuse the power vested in it and recklessly and contumaciously refuse to settle if it was apparent that in all reasonable probability its conduct would not only result in damage to the plaintiff, but also loss to itself.''

 Requests 16, 17, 18, 22 and 23 dealt with specific illustrations of what was claimed would not constitute bad faith. They were designed, according to the defendant's brief, ''to get the jurymen's eyes 'on the ball' by giving some concrete substance to the broad epithet of 'bad faith.' '' The jury were instructed that the refusal of the home office of the defendant to accept a proposition of settlement, though within the policy liability, would not, standing alone, be sufficient to sustain a charge of bad faith; that the defendant would not be acting in bad faith if it refused to make a settlement in an honest belief that it had a fair chance of victory, or of keeping the verdict within the policy limit, or that, upon reasonable grounds, the settlement offer was excessive, even though the amount was less than the policy liability; and even though it had been mistaken and a verdict in excess of the policy limit was eventually rendered. It was repeatedly stressed that the defendant would not be liable because of an honest mistake in judgment, and made plain that no issue of negligence was involved. No exception was taken to these instructions and in taking exceptions to the failure to comply with the requests it was not indicated wherein the charge as given was claimed to have been inadequate. The requests were simply read to the court without further comment. Under the circumstances no available exception was reserved. *Woodhouse* v. *Woodhouse*, 99 Vt. 91, 146, 130 Atl. 758; *Temple* v. *Duffy*, 96

Vt. 114, 118, 117 Atl. 101; *State* v. *Searles,* 108 Vt. 236, 241, 184 Atl. 701; *Johnson* v. *Moore,* 109 Vt. 282, 196 Atl. 248. It is only just to the presiding judge that the fault found with his charge shall be made reasonably plain to him, so that he may, if upon reflection he desires to do so, amplify or correct his instructions, and that no question shall be brought to this Court except those upon which it is made to appear that the trial court has had fair opportunities to pass judgment. *In re Bean's Will,* 85 Vt. 452, 464, 82 Atl. 734; *State* v. *Lapan,* 101 Vt. 124, 142, 141 Atl. 686. Indeed, most, if not all, of the requests were adequately covered by what the court said.

The jury was instructed that under the terms of the policy the defendant was given the exclusive right to control the handling of the action brought by Rule against the plaintiff, and had the exclusive right to settle the case or try it, at its option, provided it acted in good faith. An exception was taken to this instruction, upon the ground that it failed to explain that the right to settle was only within the policy limits, and that settlement beyond such limits was a matter entirely for the insured concerning which the insurer had no rights. It is argued in support of this exception that the presiding judge misconceived the principle that the insured had the right and power to settle his possibility of liability beyond the limits which he had chosen to purchase, by contributing to a settlement within the policy limits. All that is necessary to say is that this point was not made sufficiently explicit by the grounds of exception as stated below and so we do not consider it. See *Higgins, Admr.* v. *Metzger,* 100 Vt. 285, 296, 143 Atl. 394.

The defendant moved to set aside the verdict. The motion was overruled, subject to exception. It is argued that the motion should have been granted because no legal cause of action had been proved. If we take this to mean that the verdict was contrary to, or against the weight of the evidence, the answer is that such grounds are addressed to the sound discretion of the trial court, and the ruling is reviewable only when it is made to appear that the trial court has failed to exercise or has abused the discretion with which it is clothed (*Bradley* v. *Blandin et al.,* 94 Vt. 243, 257, 110 Atl. 309; *Butler* v. *Favreau,* 105 Vt. 382, 383, 166 Atl. 1), and the record here does not show

that the discretion of that court was abused or withheld. If, however, we construe the argument to mean that the verdict was without supporting evidence, a question for review is presented (*Shields* v. *Vermont Mut. Fire Ins. Co.*, 102 Vt. 224, 225, 147 Atl. 352; *Nichols* v. *Lane*, 93 Vt. 87, 89, 106 Atl. 592; *French* v. *Wheldon*, 91 Vt. 64, 68, 69, 99 Atl. 232), but it is disposed of by what we have already held concerning the motion for a directed verdict, by which the same issue was raised. *Twin State Fruit Corp.* v. *Kansas*, 104 Vt. 154, 157, 157 Atl. 831.

An exception was also taken to the denial of a motion in arrest of judgment. The ground briefed is that the complaint did not set out a cause of action. The claimed defects are not specified, but we assume them to be those that were made the basis of the motion to strike. These, however, we have already held to be faults of form only. A judgment cannot be arrested unless the complaint is so totally defective in substance that it would have been bad on general demurrer. *Raithel* v. *Hall*, 97 Vt.469, 471, 124 Atl. 586. And after verdict every presumption is to be made in favor of the sufficiency of the pleadings. *Newton* v. *Brown*, 49 Vt. 16, 18. No error appears.

The last motion filed by the defendant, and denied subject to exception, was for judgment notwithstanding the verdict. The ground briefed is the same as that relied upon in the motion for arrest. Such a motion raises questions of pleading, and is ordinarily granted only when made by the plaintiff (*Trow* v. *Thomas*, 70 Vt. 580, 583, 41 Atl. 652; *Stoddard* v. *Ins. Co.*, 75 Vt. 253, 256, 54 Atl. 284; *Davis* v. *Streeter*, 75 Vt. 214, 219, 54 Atl. 185; *Lynch's Admr.* v. *Central Vt. Ry. Co.*, 89 Vt. 363, 380, 95 Atl. 683; *Harrington* v. *Rutland R. R. Co.*, 89 Vt. 112, 118, 94 Atl. 431; *Tarbell* v. *Grand Tr. Ry. Co.*, 94 Vt. 449, 451, 111 Atl. 567), although when the evidence taken in the light most favorable for the plaintiff, or the undisputed facts together with those established by special verdicts, show that he has no cause of action, judgment should be entered for the defendant though the general verdict be against him. *Tarbell* v. *Grand Tr. Ry. Co.*, 94 Vt. 449, 451, 111 Atl. 567; *Harrington* v. *Rutland R. R. Co.*, 89 Vt. 112, 118, 94 Atl. 431; and see *Platt, Admx.* v. *Shields et al.*, 96 Vt. 257, 270, 119 Atl. 520. We have held that the complaint was good after verdict and that the evidence

500

fairly and reasonably tended to show a cause of action, and so this motion was properly overruled.

*Judgment affirmed.*

BUTTLES, J., dissents.

(*Note.*—The late Chief Justice Powers finished his work upon this opinion not long before his death, which occurred on June 24, 1938. From the star (*) on page 491 the opinion is *Per Curiam*).