Cowden v. The Aetna Casualty and Surety Co.

*Thorp, Reed & Armstrong*, for plaintiff.
*Reed, Smith, Shaw & McClay*, for defendant.

COLUMBUS, J., June 30, 1955.—John R. Cowden brought this action against the Aetna Casualty and Surety Company to recover the sum of $35,000 paid

by Cowden in excess of the coverage of a policy of insurance issued by Aetna to Cowden, in satisfaction of a judgment recovered against Cowden and one Gilbert Latham by Walter Phillips. The coverage under the terms of the policy for injury to any one person was limited to $25,000.

This action was predicated on a claim that Aetna breached its duties under the policy and acted in bad faith in refusing to contribute the limit of its policy in response to an offer to settle Phillips' claim for an amount in excess of the policy limits, to which Cowden was willing to contribute the difference. The case was tried before Columbus, J., and a jury, and the jury returned a verdict in the sum of $36,000. The case is now before the court en banc on defendant's motion for judgment n. o .v.

This case had its genesis in an accident on February 21, 1949, involving a truck owned by plaintiff and another vehicle driven by Latham, in which Walter Phillips was a passenger. The facts surrounding the accident are reported in the case of Phillips v. Cowden, 370 Pa. 288, at 290 and 291. Briefly restated, it appears that on February 21, 1949, at about 6:30 a.m. on a dry, clear day, one of Cowden's trucks was being operated by his employe along Route 980 in Washington County. Phillips, a passenger in Latham's auto, which was being driven at the rate of 45 miles per hour, noticed a ball of smoke on the right-hand side of the road about 300 to 400 feet ahead. Phillips warned Latham to stop, but he nevertheless continued into the smoke and crashed into the rear of Cowden's truck which was then standing on the highway. Cowden's driver said that he stopped the truck when he noticed a light under the floor boards and smelled smoke. At the time of the accident he was beneath the truck attempting to extinguish a fire.

When suit was entered against Cowden, his insurer, Aetna, employed Gilmore Schmidt, Esq., of Washington County, an attorney of 21 years' experience in the trial of personal injury cases, to defend the action, and suggested to Cowden that inasmuch as the claim sought damages ($75,000) in excess of the policy limit ($25,-000), he might wish to engage private counsel to protect his "personal interest".

The case was tried three times. The first trial resulted in a mistrial, and the second, in February 1951, produced a verdict of $100,000 against Cowden and Latham. After this verdict was rendered, plaintiff employed Thorp, Reed and Armstrong, a prominent Pittsburgh law firm, as private counsel. Aetna employed John M. Reed, Esq., a Pittsburgh attorney of 35 years' experience in the trial of personal injury cases, as additional counsel to assist in "all matters pertaining to the case".

The Court of Common Pleas of Washington County refused Cowden's motion for judgment n. o. v. However, it ordered a new trial, and in an opinion written by Judge Cummings, the trial judge, he said, inter alia:

"The great weight of the evidence points to the conclusion that the driver of the Cowden truck was not negligent, that there was such an emergency as created an immediate need for stopping. . . .

"We also think that in any future trial, under the peculiar circumstances if the same are as developed in this case, serious consideration must be given to the question of proximate cause. . . .

"Another reason assigned why a new trial should be granted is the excessiveness of the verdict which was in the round figures of $100,000. We are in agreement that the amount of the verdict is excessive. If this were all that is involved, we could require a remittitur.

However, in view of our conclusions that the verdict is contrary to the weight of the evidence, we are convinced that the due administration of justice requires a new trial and a remittitur alone would not be sufficient."

Latham's insurer paid into court the sum of $10,000, the full amount of its liability.

Cowden's private counsel and his insurer's counsel joined their efforts in taking an appeal which resulted, in April 1952, in an affirmance by the Supreme Court of the lower court's action in awarding a new trial. Having so ruled, the Supreme Court did not consider the refusal of judgment n. o. v. See Phillips v. Cowden, supra. The opinion by Mr. Justice Allen M. Stearne said in part:

"This conflicting testimony raised two separate questions for determination by a jury.

. . . In a number of strikingly similar cases we have decided that both of these issues should be determined by a jury unless the facts are undisputed": (citing cases).

In August or September 1952, Aetna's claims manager, Charles DeCarlo, upon receipt of a tentative offer from Phillips' attorney to settle the case upon the payment of $40,000 by Cowden and his insurer, arranged a meeting which was held on October 3, 1952. Present at the meeting were John T. Matiak, Aetna's claim adjuster, John M. Reed, Esq., and J. Roland Johnston, Esq., the latter of Thorp, Reed and Armstrong, Cowden's private counsel. The latter did not recall the purpose of the meeting, but both Reed and Matiak testified that the settlement proposal and plans for the next trial were discussed.

The third trial commenced November 24, 1952. The defense was handled by Mr. Schmidt. Mr. Johnston was present, according to his statement, "as an ob-

server representing Mr. Cowden, of course, individually, to make such suggestions or offer such advice to Mr. Schmidt, counsel for Aetna, as he might want or I might think proper". Mr. Johnston, after hearing two days of testimony, recommended to Mr. Earl Reed, the senior member of his firm, that "the case better be settled". Reed then phoned Phillips' attorney, Mr. George Bloom, who said that he would recommend a settlement of $45,000, of which $35,000 would be payable on Cowden's behalf.

At the noon recess on Wednesday, November 26, 1952, the third day of the trial, Mr. Johnston personally delivered to Mr. Schmidt a letter addressed to him which, after quoting from the Supreme Court opinion, stated:

"The trial of this action is now in its third day. Substantially, the same evidence is being presented to the court and jury again. In view of the language of the Supreme Court as to what questions are for the jury, it seems to us that there is a grave and not remote possibility of another verdict and judgment substantially in excess of $25,000.00.

"George Bloom, Esquire, Counsel for the plaintiff, has made us a firm offer to accept in settlement (in addition to the aforementioned $10,000.00) the sum of $35,000.00. From our conversations with Mr. Bloom, we have reason to believe that that figure might well be reduced to $32,500.00. Negotiations looking to that end should be undertaken, and if such an offer of compromise be made, our client is willing and offers to pay $7,500.00, provided that your client pay the limits of its liability, that is, $25,000.00.

"Should such an offer, that is, $32,500.00, be made, and your client refuses to pay the limits of its liability, we would be compelled to look to the insurance company for reimbursement if after final judgment Mr.

Cowden should be required to pay in excess of the $7,500.00 he is willing to contribute."

No reply was made to this letter.

Mr. Cowden acquiesced in his personal counsel's opinion that the case should be settled. Mr. Bloom, Phillips' counsel, agreed with Earl Reed and Johnston to accept $45,000 in settlement, of which $35,000 would be payable on behalf of Cowden. Thereafter, on Monday, December 1, 1952, after all the "testimony and evidence in the case had been concluded but before any arguments and charge of the jury . . .", Mr. Johnston addressed and delivered to Mr. Schmidt another letter proposing that Aetna pay $25,000, and Cowden the balance of $10,000, and warning that Cowden would look to Aetna for reimbursement if he were required to pay in excess of the amount he was then ready to contribute. No reply was made to this letter. However, Schmidt testified that upon receipt of it he phoned DeCarlo, read him the letter, discussed the case, and informed him ". . . the way the thing stood there was no reason to change my prior opinion that the matter was one for trial, that we have a good chance of winning the case".

On December 2, 1952, the jury returned a verdict in the amount of $90,000 against both Cowden and Latham. Motions for judgment n. o. v. and for a new trial were refused. The case was finally settled for $80,000, of which amount $10,000 was paid by the other driver's insurer, $25,000 by Aetna and $45,000 by Cowden.

Cowden instituted this action for $35,000, representing the difference between the amount he finally paid ($45,000) and the amount he had offered to contribute to the settlement ($10,000).

The question presented for our consideration then by defendant's motion for judgment n. o. v. is whether,

under all the evidence, defendant insurance company may be said to have acted arbitrarily or in bad faith toward plaintiff insured because it refused the offer of settlement in the personal injury action. On the motion for judgment n. o. v. the evidence must be considered in the light most favorable to plaintiff, all conflicts therein being resolved in his favor, and he must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence: Toole v. Miller, 375 Pa. 509, 511; McFadden v. Pennzoil, 341 Pa. 433, 436. This we have done.

The case is fairly clear of dispute insofar as the facts are concerned. However, there is testimony by plaintiff that "on the second or third day" of the trial he discussed the matter of settlement with Mr. Schmidt, asking him ". . . if he didn't think we should get a hold of Mr. DeCarlo and see if we couldn't settle this case", to which Schmidt is alleged to have answered that he "was getting paid for trying the case, and not settling it". Schmidt, however, denied this. Later Johnston testified on cross-examination that at the October 3rd meeting he stated the case should be settled. John M. Reed, Esq., at whose office the meeting was held, flatly contradicted this, saying that the Phillips offer to settle for $50,000 ($40,000 of which would be payable on Cowden's behalf) was characterized by Johnston as entirely unreasonable in amount, and Reed testified that Johnston was of the opinion that "no counter offer should be made and the question of settlement should be allowed to rest until some further offer was received by plaintiff's attorneys. However, we resolve these conflicts in plaintiff's favor.

Both parties agree that defendant's liability depends on whether or not defendant's actions and course of conduct in handling the Phillips claim evidenced bad

faith in the discharge of its duties under the contract of insurance with Cowden. Since the jury's verdict constituted a finding that defendant was guilty of bad faith, we are required to review the evidence to determine whether it justifies the jury's finding.

The precise question here presented has not been considered by the appellate courts of this State. However, a few cases has shed some light on the aspects of the problem here involved. In Schmidt v. Travelers Insurance Co., 244 Pa. 286, the entry of judgment for defendant insurer upon demurrer to the insured's statement of claim was affirmed, the court stating that the insured was under *no obligation to settle in advance of trial,* and the decision to settle or try was committed to it. However, an examination of the case reveals that the statement of claim made no charge of bad faith or negligence on the part of the insurer.

In Malley v. American Indemnity Co., 297 Pa. 216, 224, it was stated:

"When an insurance company or its representative is notified of loss occurring under an indemnity policy, it becomes its duty immediately to investigate all the facts in connection with the supposed loss as well as any possible defense on the policy. It cannot play fast and loose, taking a chance in the hope of winning, and, if the results are adverse, take advantage of a defect in the policy."

In Weiner v. Targan, 100 Pa. Superior Ct. 278, 285, the following statement appears:

"The relation of the insurer and insured required a high degree of *good faith* in the conduct of the indemnity company's counsel generally, and especially when the case was called for a trial in which he had undertaken to present the defense to the claim; see N. Y. C. R. R. Co. v. Mass. Bonding etc., Co., 184 N. Y. S. 243,

in which the court said: 'When a casualty company, to protect itself from liability, assumes the defense of an action, to the entire exclusion of the defendant on the record, it should be held to a strict *rule of good faith* in conducting the defense (citing cases) and when, in its own interest, it deprives the defendant of a substantial advantage in the course of a trial, it should be held liable for the damages naturally resulting thereby' " (Italics supplied.)

In the recent case of Perkoski v. Wilson, 371 Pa. 553, where a petition was presented by defendant's insurer asking to have its liability determined after verdicts and judgments had been entered in trespass actions against its insured, the Supreme Court, speaking through Mr. Justice Jones, said at pages 556-57:

"When the company voluntarily undertook the defense of Wilson, in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for an exercise of the *utmost good faith*, particularly in view of the possible conflict of interest between the insurer and the insured. . . . Good conscience and fair dealing required that the company pursue a course that was not advantageous to itself while disadvantageous to its policyholder . . . ". (Italics supplied.)

In 40 A. L. R. 2d at pages 168 to 228, there is a rather extensive annotation on the "DUTY OF LIABILITY INSURER TO SETTLE OR COMPROMISE". It appears that the prevailing rule in most jurisdictions holds that a liability insurer, having assumed control of the right of settlement of claims against the insured, may become liable in excess of its undertaking under the policy provisions if it fails to exercise "good faith" in considering offers to compromise a claim for an amount within the policy limits. The annotation shows this to be the rule in 26 States: 40 A. L. R. 2d 178-80.

As to what constitutes good faith and what degree of consideration for the insured's interest must be shown to meet the good faith standard, there is apparently no universally acceptable definition. "Generally speaking, good faith means being faithful to one's duty or obligation"; a good faith decision not to settle must be "an honest and intelligent one . . . based upon a knowledge of the facts and . . . of the nature and extent of the injuries so far as they can reasonably be ascertained. This requires the insurance company to make a diligent effort to ascertain the facts": Hilker v. Western Automobile Ins. Co., etc., 204 Wis. 1, 235 N. W. 413. As defined by some courts, good faith apparently implies no more than the absence of an improper motive and some basis in reason for the insurer's act. As was said in Perkoski v. Wilson, supra, "Good conscience and fair dealing required that the company pursue a course that was not advantageous to itself while disadvantageous to its policyholder".

Conversely, bad faith suggests an improper motive, a dishonest approach without foundation in reason. Arbitrariness suggests the lack of any apparent motivation, and implies willfulness or wantoness. Bad faith in this respect has been defined as an intentional disregard of the insured's financial interest, in the hope of escaping the full responsibility imposed upon the insurer by the policy: Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, 1 A. 2d 817. Bad faith has been shown by failure to make such payment and settlement as honest judgment and discretion dictate within the limits of the policy: Traders & Gen. Ins. Co. v. Rudco Oil & Gas Co., 129 F. 2d 621; by the refusal to make a settlement for an amount within the policy coverage, which refusal was persistently maintained against the advice of counsel and repeated recommendations of the adjuster upon complete infor-

mation concerning the probability of a large verdict: Johnson v. Hardware Mutual Casualty Co., supra; by the frivolous disregard of the insured's rights by refusing to accept an offer to settle for an insignificant sum: Lanferman v. Maryland Cas. Co., 222 Wis. 406, 267 N. W. 300.

The failure of the insurer to properly investigate the circumstances and ascertain the facts is evidence of bad faith: 40 A. L. R. 2d 208, and cases there cited. The failure of an insurer, upon receiving an offer to compromise an action against the insured, to inform the latter of this has been regarded as evidence of bad faith: Home Indem. Co. v. Williamson, 183 F. 2d 572. A showing that, after a judgment largely in excess of the policy coverage had been recovered, the insurer refused to contribute the amount of such coverage toward a settlement. demanding that the insured contribute the bulk of the amount required, even though the insured knew there was no reasonable prospect of reversing the judgment by an appeal, and in fact did not appeal therefrom, was held in Boling v. New Amsterdam Cas. Co., 173 Okla. 160, 46 P. 2d 916, to support a finding of bad faith. The fact that the insurer, realizing the probability of an unfavorable result, has used the threat of an excess verdict in an attempt to induce the insured to contribute to the amount needed to effect a settlement within the policy limits, has frequently been relied upon as strong evidence of bad faith: Maryland Cas. Co. v. Cook-O'Brien Constr. Co., 69 F. 2d 462, cert. den., 293 U. S. 569, and cases cited in 40 A. L. R. 2d 205, 206.

On the other hand, something more than a mere error of judgment is necessary to constitute bad faith, and the insurer cannot be required to predict with exact certitude the result of a closely contested law-

suit: Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S. W. 2d 777. An insurer's refusal of a settlement under the bona fide belief that an action might be defeated or the verdict kept within the policy limits has been held *not* to constitute bad faith: Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852; City of Wakefield v. Globe Indem. Co., 246 Mich. 645, 225 N. W. 643; nor is the insurer compelled to assume that the jury will believe the injured person's witnesses in preference to its own: Best Bldg. Co. v. Employers Liability Assur. Corp., 247 N. Y. 451, 160 N. E. 911. It was held not to be bad faith to refuse a settlement where there was considerable evidence of collusion and failure to coöperate on the part of the insured: State Automobile Mut. Ins. Co., etc. v. York, 104 F. 2d 730, cert. den., 60 S. Ct. 120.

It is clear from the cases that the insurer must have due regard and consideration for the interests of the insured, and cannot recklessly and contumaciously abuse the power vested in it under the terms of the policy. The insurer is not required to completely forego appropriate consideration of its own interest in determining whether or not an offer should be accepted; however, the trust relationship born of the policy of insurance imposes upon the insurer the duties of "Good conscience and fair dealing" that require it to "pursue a course . . . not advantageous to itself while disadvantageous to its policyholder . . .": Perkoski v. Wilson, supra.

The requirement that the insurer have due regard for the rights of the insured and observe the correlative obligation of good faith in considering settlement offers is grounded not only on the nature of the trust relationship of insurer and insured (cf. Perkoski v. Wilson, supra), but also upon the usual provisions of the

policy like the one involved here,* under which the insurer possessed the right to make such settlement as it deemed expedient, and the insured was precluded from voluntarily "making, except, at its own cost, any payment or assuming any obligation". Implicit in the contract provision was the right of the insurer to refuse to settle claims subject to the limitation that the refusal must be in good faith. As was said in Traders & General Ins. Co. v. Rudco Oil & Gas Co., supra, cited with approval in Royal Transit, Inc. v. Central Surety & Ins. Corp., 168 F. 2d 345, 349: " 'Exclusive authority to act does not necessarily mean the right to act arbitrarily. . . . The right to control the litigation in all of its aspects carries with it the correlative duty to exercise diligence, intelligence, good faith, honest and conscientious fidelity to the common interests of the parties' ".

The mere refusal to settle is, of course, not per se, evidence of bad faith, nor is a mere honest error in

---

* The pertinent policy provisions are as follows:

Par. 2. "It is further agreed that as respects insurance afforded by this policy the Company shall

"(a) defend in his name and behalf any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company shall have the right to make such investigation negotiation and settlement of any claim or suit as may be deemed expedient by the company."

Par. 9. "Assistance and coöperation of the insured."

"The insured shall coöperate with the Company and, upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits; and the Company shall reimburse the insured for expenses, other than loss of earnings, incurred at the Company's request. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident."

judgment indicative of bad faith; Georgia Cas. Co. v. Mann, supra. Plaintiff has the burden of showing *other* evidence denoting that the defendant's refusal was not the product of an honest judgment, but rather amounted to a display of bad faith.

What facts, inferences or circumstances were here alleged and proved as evidence of bad faith by defendant as would entitle plaintiff to recover? Plaintiff urges that the single or cumulative effect of: (1) Schmidt's reply to Cowden to the effect that he was paid to try, not settle; (2) the failure to heed the suggestion given by Johnston at the October 3, 1952, meeting that settlement was advisable; (3) the failure to answer the two letters handed by Johnston to Schmidt during the course of the trial; (4) the failure to invite Cowden or his counsel to the meeting of November 28, 1952, at which Johnston's letter and the wisdom of settling the claim were discussed; (5) the failure to properly appreciate the fact that a jury had already returned a verdict of $100,000 in the second trial, manifest the insurer's bad faith.

The backwash of the Phillips-Cowden litigation, and the adversity encountered by Cowden, has the unfortunate tendency to obscure, magnify and distort out of proper proportion the behavior and actions of defendant and its agents in defending the Phillips claim. The jury's verdict confirmed the fears of Cowden and his private counsel, and verified the basis of their concern as expressed in the letters sent Schmidt. However, it does not of itself lend substance to the charge of bad faith, proof of which is essential to plaintiff's recovery. It is merely proof that the results of Saturday's contest are more certainly stated on the following Monday than they are predictable on the preceding Friday.

To obtain the proper perspective that will enable us to appraise the attitude of the insurer in handling the Phillips claim, we must focus our attention on the facts

and circumstances in appearance at the time the requests for settlement were made.

This was no clear case of liability, so that the refusal to settle could be characterized as capricious and arbitrary. On the contrary, the trial judge, in his opinion awarding a new trial, said, inter alia:

"The great weight of the evidence points to the conclusion that the driver of the Cowden truck was not negligent. . . . We also think that in any future trial, under the peculiar circumstances if the same are as developed in this case, serious consideration must be given to the question of proximate cause. . . ."

That this was a primary consideration affecting defendant's decision not to settle is certainly clear from the testimony of Schmidt, DeCarlo, Matiak and Reed. Their judgment had a firm basis in the circumstances surrounding the accident as revealed by their investigation, and as confirmed by the evidence adduced at the trial. It was an honest, intelligent and rational judgment. It coincided with the appraisal of the court en banc, speaking through Judge Cummins who heard substantially the same evidence at the second and third trials, and who had the undoubted right to grant as many trials as justice required. They adhered to their refusal to settle on the terms suggested even after the receipt of Johnston's letters, for a consideration of the letters showed no new information warranting a change in their evaluation of the case. The legal issue of Cowden's liability, and hence Aetna's liability, continued to be in real doubt.

An examination of the facts giving rise to Phillips' claim convincingly demonstrates that defendant was justified in relying on advice of its able and experienced counsel and adjusters that the evidence on the issue of liability showed that the case could be won. Their belief in ultimate success cannot be said to have sprung from an optimism unrelated to reality. Nor do

we think that the mention in the Supreme Court opinion after the second trial that this issue presented a jury question was sufficient reason for defendant's agents and employes to change their well-founded opinion. This certainly did not bar an honest belief that a verdict could be returned for Cowden. Although Cowden was being exposed to the hazards of a jury trial, this was not, in view of the other attendant circumstances, evidence of hostility to the insured's interest or a capricious or bad faith attitude.

It has been held that the circumstances surrounding the claim against the insured is a relevant factor in determining whether the insurer's rejection of an offer of compromise was evidence of good or bad faith. The reason for this is set forth in 40 A. L. R. 2d at page 196:

"Since the likelihood of success or failure of the injured claimant in his action against the insured, and the former's ability to prove damages in an amount exceeding the policy coverage (or the compromise figure offered), are the primary considerations in determining whether an offer of settlement should be accepted or rejected, it is apparent that the weight of the evidence against the insured on the issues of damages and liability is relevant in determining whether the insurer should have compromised."

In 40 A. L. R. 2d, page 201, it is stated:

". . . the fact that it appeared from the evidence on the issues of liability and damages in the action against the insured that there was a reasonable chance of absolving him from liability, or at least of holding the verdict below the policy limits, has frequently been referred to as supporting the conclusion that the insurer was not chargeable with negligence in rejecting a compromise offer." (Citing cases.)

In Hoyt v. Factory Mut. Liability Ins. Co., 120 Conn. 156, 179 Atl. 842, it was held that there was no

ground for a conclusion of bad faith on the insurer's part where there was a litigable issue as to the insured's liability, *even though insurer's own agents had recommended a settlement.*

Was the refusal of the insurance company to settle earmarked by bad faith when considered against the background of the $100,000 verdict returned by the jury in the second trial? We think not. The effect of the jury's verdict was effectively erased by the action of the court en banc and the Supreme Court in authorizing a new trial. The insurer's decision to contest, already well grounded on an intelligent and honest appraisal of the facts surrounding the claim, was further bolstered by the expressed opinions of the lower court (as to both liability and the amount of damages) and the Supreme Court. The events subsequent to the verdict *increased,* rather than lessened, the reasons why the insured had a right to appraise so highly its chances of prevailing, or at least of keeping the recovery within the policy limits.

After carefully analyzing the insurer's actions in handling the Phillips claim and in failing to compromise the action, and viewing the allegations of bad faith against the mirror of circumstances presented by the claim, we do not see the reflection of anything that can be labeled "bad faith". We cannot appraise the evidence presented by plaintiff as sufficient to convict defendant of the charge of bad faith as we understand that term and as it is defined in the cases. At the most, plaintiff has shown that his judgment and that of his private counsel was better than that of his insurer and its agents. What was said in Lawson & Nelson S. & D. Co. v. Associated Indem. Corp., 204 Minn. 50, 282 N. W. 481, seems appropriate insofar as this case is concerned. The court there said that although on hindsight it might have been better for all concerned if the proposed settlement had been accepted, no mortal

has the gift of prophecy, and insofar as any standard of due care could be applied to the exercise of honest judgment, the result justified no other conclusion than that there was no showing of bad faith.

A careful review of all the circumstances in this case leads inevitably to the conclusion that defendant's decision not to compromise was the result of the honest, considered judgment of its trial lawyer, claims manager and associate counsel. Their judgment coincided with the opinion of the trial court written after the second trial, in which the evidence was substantially the same as that presented in the third trial. It was a judgment well founded, and one clearly justified by the facts, notwithstanding the adversity subsequently encountered by Cowden as a result of this decision. Plaintiff has produced nothing to show that the decision not to accept the settlement proposal was in anywise inconsistent with the insurer's duty to its insured. In the absence of any proof to the contrary, there is a presumption that men have acted fairly, honestly, properly, in good faith and without fraud: 20 Am. Jur., Evidence, §229; 31 C. J. S., Evidence, §126.

Inasmuch as plaintiff has failed to overcome this presumption, we will enter judgment n. o. v. for defendant.

### Order of Court

And now, June 30, 1955, the motion ex parte defendant for judgment non obstante veredicto is granted, and it is ordered that judgment in its favor be entered upon payment of the verdict fee.

### Dissenting Opinion

KENNEDY, J., July 7, 1955.—I am not in agreement with the majority opinion that plaintiff failed to submit sufficient evidence to overcome the presumption that defendant "acted fairly, honestly, properly, in

good faith and without fraud". The verdict of $100,000 in the second trial, although declared excessive by the court en banc, was never considered as an arbitrary and capricious verdict because Phillips was seriously hurt and his claim for special damages was admittedly substantial. The lowest offer of compromise settlement before commencement of the third trial, and to be paid, if accepted, by plaintiff and defendant, was in the sum of $40,000. This offer was discussed by the representatives of the parties in this proceeding, and based on the testimony construed in its most favorable light for plaintiff herein, allows an inference that it was realized by defendant that if the injured party Phillips was awarded a verdict in a third trial, the amount would be much higher than its policy coverage which was in the sum of $25,000. After the Supreme Court decision, 370 Pa. 288, it was clear that there could not be a directed verdict in favor of Cowden when that proceeding came on for retrial. The jury in this case, therefore, could have found from the evidence and the reasonable inferences that defendant intentionally disregarded its insured's financial interest, in the hope that the jury would find a verdict in Cowden's favor and thus the insurer would escape the full responsibility imposed upon it by the terms of the policy: See Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, 1A. 2d 817.

This defendant owed to plaintiff the utmost good faith because of their conflict of interests. See Perkoski v. Wilson, 371 Pa. 553. The jury, in my opinion, had sufficient evidence submitted to it to conclude defendant breached this duty, and that the breach manifested bad faith in its legal sense. The majority opinion on page 13 summarizes this evidence in paragraphs numbered (1) to (5) inclusive, and it is therefore not necessary to repeat it herein. Suffice to say the composite of all of this evidence, viewing it most favorably for

the plaintiff, justified the jury's finding a verdict for the plaintiff. Hence I dissent from the Order of the majority setting this verdict aside and entering judgment for the defendant.

### Final Judgment

July 8, 1955, verdict fee paid and judgment n. o. v. entered in favor of defendant and against plaintiff.